NUMBERS 13-00-602-CR & 13-00-605-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


 

KEVIN JENKINS, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 

On appeal from the 344th District Court of Chambers County, Texas.


 

O P I N I O N



Before Justices Yañez, Rodriguez, and Baird (1)


Opinion by Justice Baird 


Pursuant to rule 50 of the Texas Rules of Appellate Procedure, we withdraw our earlier opinion issued on February 28,
2002, and substitute the following opinion. Tex. R. App. P. 50.

Appellant was charged by indictment with the offense of possession of more than fifty but less than 200 pounds of
marihuana in cause no. 10,887, and possession with the intent to deliver 400 grams or more of cocaine in cause no. 10,888. 
The cases were consolidated for trial. A jury convicted appellant of each charged offense, and found appellant used or
exhibited a deadly weapon in each case. The trial court assessed punishment at twenty years confinement in cause no.
10,887, and thirty-five years confinement and a fine of $5,000 in cause no. 10,888. Appellant raises five points of error. 
The first and third points contend the evidence is legally insufficient. We agree and reverse.

I. Standard of Appellate Review

In determining whether the evidence is legally sufficient to sustain a conviction, we employ the standard of Jackson v.
Virginia and ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,
319 (1979). The standard is applicable to both direct and circumstantial evidence cases. Geesa v. State, 820 S.W.2d 154,
158 (Tex. Crim. App. 1991), overruled in part on other grounds, Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim. App.
2000).

In possession of controlled substance cases, two evidentiary requirements must be met: first, the State must prove the
defendant exercised actual care, control and management over the contraband; and second, that he had knowledge that the
substance in his possession was contraband. King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App.1995)(citing Martin v.
State, 753 S.W.2d 384, 387 (Tex. Crim. App.1988)). To establish criminal liability as a party, the State must prove that the
defendant acted with the intent to promote or assist the offense by soliciting, encouraging, directing, aiding, or attempting
to aid the other person in the commission of the offense. Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 1994). The mere
presence of the accused at a place where contraband is located does not make him a party to joint possession, even if he
knows of the contraband's existence. Oaks v. State, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982).

Whether the theory of prosecution is sole or joint possession, the evidence must affirmatively link the accused to the
contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the
contraband's existence and that he exercised control over it. Travis v. State, 638 S.W.2d 502, 503 (Tex. Crim. App. 1982). 
When an accused is not in exclusive possession and control of the place where contraband is found, it cannot be concluded
he had knowledge or control over the contraband unless there are additional independent facts and circumstances that
affirmatively link him to the contraband. Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); Cude v. State, 716
S.W.2d 46, 47 (Tex. Crim. App. 1986); Sandoval v. State, 946 S.W.2d 472, 476 (Tex. App.-Corpus Christi 1997, no pet.). 
Similarly, when the contraband is not found on the accused's person or it is not in the exclusive possession of the accused,
additional facts and circumstances must link the accused to the contraband. Menchaca v. State, 901 S.W.2d 640, 651 (Tex.
App.-El Paso 1995, pet. ref'd); Musick v. State, 862 S.W.2d 794, 804 (Tex. App.-El Paso 1993, pet. ref'd).

The affirmative links doctrine is the appropriate means of applying the Jackson rationality standard of review. Martinets v.
State, 884 S.W.2d 185, 188 (Tex. App.-Austin 1994, no pet.). The Court of Criminal Appeals explained this doctrine in
Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995):

[U]nder our law, an accused must not only have exercised actual care, control, or custody of the substance, but must also
have been conscious of his connection with it and have known what it was, evidence which affirmatively links him to it
suffices for proof that he possessed it knowingly. Under our precedents, it does not really matter whether this evidence is
direct or circumstantial. In either case it must establish, to the requisite level of confidence, that the accused's connection
with the drug was more than just fortuitous. This is the whole of the so-called "affirmative links" rule.


Id. at 747.

Certain nonexclusive factors may be considered when determining whether the evidence is sufficient to affirmatively link
the accused with the controlled substance:

1. Whether the contraband was in plain view or recovered from an enclosed place; (2)

2. The accused was the owner of the premises or had the right to possess the place where the contraband was found, or the
owner or driver of the automobile in which the contraband was found;

3. The accused was found with a large amount of cash;

4. The contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was
sitting;

5. The contraband was found in close proximity to the accused;

6. A strong residual odor of the contraband was present;

7. The accused possessed other contraband when arrested; 

8. Paraphernalia to use the contraband was in view, or found on the accused;

9. The physical condition of the accused indicated recent consumption of the contraband in question;

10. Conduct by the accused indicated a consciousness of guilt; (3)

11. The accused attempted to flee;

12. The accused made furtive gestures;

13. The accused had a special connection to the contraband;

14. The occupants of the premises gave conflicting statements about relevant matters; 

15. The accused made incriminating statements connecting himself to the contraband;

16. The quantity of the contraband; and,

17. The accused was observed in a suspicious area under suspicious circumstances. 


Carvajal v. State, 529 S.W.2d 517, 520 (Tex. Crim. App. 1975); State v. Derrow, 981 S.W.2d 776, 779 (Tex.
App.-Houston [1st Dist.] 1998, pet. ref'd); Mohmed v. State, 977 S.W.2d 624, 627 (Tex. App.-Fort Worth 1998, pet. ref'd);
Cantu v. State, 944 S.W.2d 669, 670 (Tex. App.-Corpus Christi 1997, pet. ref'd); Ortiz v. State, 930 S.W.2d 849, 853 (Tex.
App.-Tyler 1996, no pet.); Dixon v. State, 918 S.W.2d 678, 681 (Tex. App.-Beaumont 1996, no pet.); Washington v. State,
902 S.W.2d 649, 652 (Tex. App.-Houston [14th Dist] 1995, pet. ref'd); Watson v. State, 861 S.W.2d 410, 414-15 (Tex.
App.-Beaumont 1993, pet. ref'd).


The number of the factors is not as important as the logical force the factors have in establishing the elements of the
offense. Jones v. State, 963 S.W.2d 826, 830 (Tex. App.-Texarkana 1998, pet. ref'd); Hurtado v. State, 881 S.W.2d 738,
743 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd); Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.-Houston [1st Dist.]
1994, pet. ref'd). While affirmative links may be proved by circumstantial evidence, proof amounting to a strong suspicion
or even a probability will not suffice. Grant v. State, 989 S.W.2d 428, 433 (Tex. App.-Houston [14th Dist.] 1999, no pet.)
(citing Dubry v. State, 582 S.W.2d 841, 844 (Tex. Crim. App. [Panel Op.] 1979)). Ultimately, the question of whether the
evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case by case basis. 
Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.-Austin 1991, pet. ref'd).

II. Factual Summary.

The evidence viewed in the light most favorable to the prosecution reveals the following. On June 8, 1999, at
approximately 8:30 p.m., Texas Department of Public Safety Trooper, Derek Prestridge, was patrolling Interstate 10
eastbound in Chambers County with Trooper Cody Muse. (4) This particular stretch of the interstate consisted of multiple
lanes of traffic separated by a cement wall from the multiple lanes of westbound traffic. Prestridge observed a 1990
Chevrolet Lumina four door automobile in the center lane cross the left lane marker. Prestridge activated his emergency
lights to stop the vehicle. At that time, Prestridge could see two individuals in the vehicle. As the vehicle pulled over,
Prestridge saw the front seat passenger, appellant, apparently "moving around, shuffling inside the car," and a third
individual, Jerome Degree, who had been laying in the back seat "popped up." Prestridge testified appellant's movement
created the "possibility of weapons in the vehicle and either attempting to hide a weapon or maybe making access to a
weapon for their - themselves during the contact." 

The driver, Earl Bellard, immediately exited the vehicle, which Prestridge found uncommon. (5) Prestridge performed the
horizontal gaze nystagmus test on Bellard to determine if he was intoxicated. While Prestridge performed the test, Muse
checked on the passengers. Prestridge asked Bellard if he had a criminal record; the information Bellard provided
conflicted with the information Prestridge received from the dispatcher. (6) Appellant provided information of his criminal
record that also conflicted with Prestridge's information. (7) Prestridge testified that appellant appeared nervous, and while
nervousness was normal when being stopped for a traffic violation, appellant appeared more nervous than normal. 
Appellant was asked to exit the vehicle and when he complied, he backed toward Prestridge as if to be handcuffed. 
Prestridge found this unusual. Prestridge's pat-down search of appellant revealed no contraband, paraphernalia or
weapons.

Prestridge questioned the three occupants of the vehicle separately about their travels. Prestridge testified appellant was
unsure and evasive. On the video, Prestridge asked Bellard for permission to search the vehicle. Bellard stated he was not
the owner. Prestridge then asked Degree, who was the owner, for permission. Degree consented to the search. Prestridge
did not seek appellant's permission to search the vehicle. Upon searching the area underneath the front passenger seat,
Prestridge recovered a .357 Smith & Wesson firearm. The weapon was loaded and positioned with the grip toward the
front of the vehicle. This discovery caused Prestridge to order the occupants of the vehicle to remove their shoes, which
reduced the chance of their flight or resisting arrest. (8) A second gun was subsequently found in the vehicle. (9) Neither
weapon was examined for fingerprints. 

Prestridge opened the trunk and recognized the odor of marihuana. Prestridge testified the odor was not apparent before the
trunk was opened. He discovered seven bundles of marihuana. The vehicle was transported to the highway patrol office
where the back seat was removed and Prestridge discovered an envelope, a box of sandwich baggies, rubber gloves, $1,978
in cash, and a Ritz cracker box which contained the alleged cocaine. 

Luggage was found in the back seat and in the trunk. A black duffle bag, identified as belonging to Bellard, was found in
the back passenger seat. That bag contained drug paraphernalia in the form of baggies used for weighing and packaging
drugs. A blue bag identified as belonging to appellant was also found in the backseat. That bag contained articles of
clothing but no drug paraphernalia. Prestridge stated that nothing in appellant's luggage linked him to the contraband. 
Prestridge thought it odd to carry luggage in the back seat. In the trunk, Prestridge recovered a neck and back brace;
Degree is seen wearing a neck brace on the video, and heard complaining of a back injury. Articles of "Big & Tall"
clothing were also found in the trunk and Prestridge testified Degree was larger than appellant. Three pair of tennis shoes
were found in the trunk: two pair were size 14 and the third pair was size 15. Prestridge testified Degree wore size 14. A
pair of size 11 shoes were found in Bellard's bag. Degree was searched and $400 was recovered from his person. 
Appellant was also searched but no money was found on his person. 

A DPS chemist testified the marihuana weighed 103.65 pounds. The cocaine weighed 1,220 grams, and was 36% pure. 
Baytown Police Officer Charles Widner testified the Houston area was considered a hub for drug smuggling and the
transportation of drugs in the United States and the North American continent. Widner estimated the marihuana to have a
wholesale value of $43,435 and a street value of $150,000. He stated the cocaine had a street value of $300,000. Widner
stated it was uncommon for a single person to transport this amount of contraband. 

III. Analysis

We will begin our analysis by considering two cases from our sister courts which addressed a similar factual scenario. In
Dixon v. State, 918 S.W.2d 678, 679 (Tex. App.-Beaumont 1996, no pet.), two peace officers stopped a car for speeding;
Dixon was a passenger. The driver said he and Dixon were going to Louisiana to visit his sick mother. Id. at 680. Dixon
was extremely nervous, his breathing was rapid, his hands were shaking and he would not make eye contact. Id. Dixon
claimed he and the driver, his cousin, were from Houston and en route to Baton Rouge, Louisiana to visit the driver's sick
sister. Id. Dixon indicated they were going to be there for three days. Id. When the second officer questioned Dixon, he
would not look at him, could not keep still, and said they were going to visit his sick sister. Id. Dixon stated he knew the
driver's mother and she was doing fine. Id. The driver gave consent to the search. Dixon, 918 S.W.2d at 680. One officer
opened the trunk and found two guitars and a speaker. Id. He asked what the speaker and guitars were for, and was told by
one of them that they intended to play music with them in Louisiana. Id. There was no luggage or clothes in the car. Id. 
An officer pried open the speaker and found a plastic garbage bag containing fifteen pounds of marijuana. Id. Neither
Dixon nor the driver admitted to ownership of the marijuana. Id.

After listing many of the factors that may be employed to affirmatively link Dixon to the contraband, the court found
Dixon's extreme nervousness, the conflicting statements as to who they were going to visit, the absence of luggage for a
three-day trip, and the fact that the car was borrowed were links indicating guilt. Dixon, 918 S.W.2d at 681-82. However,
the factors indicating Dixon did not have control of the contraband were not only more numerous but more convincing: (1)
Dixon did not own the car, nor was he driving it; (2) the officers did not even ask Dixon's permission to search the car
because he was not in control of it; (3) there was no evidence any of the trunk's contents belonged to Dixon and no
evidence Dixon had access to the trunk; (4) there was no evidence Dixon's fingerprints were on the speaker containing the
contraband or on anything in the trunk; (5) there was no attempt by Dixon to flee the scene, no incriminating statements,
and no furtive gestures; (6) there is no evidence Dixon was under the influence of marijuana when stopped, no odor of
marijuana, no drugs in the car, and no paraphernalia for using the contraband. Id. Because there was no evidence Dixon
had actual care, custody, control or management over the contraband, the court found the evidence insufficient to sustain
the conviction. Id. at 682.

In Moreno v. State, 821 S.W.2d 344, 352 (Tex. App.-Waco 1991, pet. ref'd), the defendant argued the evidence was
insufficient to affirmatively link him to the 745 grams of cocaine found under the hood of the vehicle. The defendant was a
passenger in the vehicle, and upon his arrest and booking, peace officers recovered eleven grams of cocaine in the
defendant's wallet. Id. Nevertheless, the court found the evidence insufficient to affirmatively link the defendant to the
cocaine found under the vehicle's hood because the defendant: (1) was not connected with the ownership or control of the
car; (2) made no furtive gestures; (3) did not attempt to escape; (4) made no incriminating statements; (5) was not under the
influence of an illegal drug; and, (6) the odor of an illegal drug was not present in or around the vehicle. Id.

We will consider the affirmative link factors enumerated above in light of this precedent to determine whether the evidence
is sufficient to establish appellant's possession of the marihuana or the cocaine, either as a principal or a party to the
charged offenses. (10) Neither the marihuana nor the cocaine was found in plain view. Instead, both were secreted; the
marihuana was in the trunk, and the cocaine underneath the back seat of the vehicle. Appellant was a passenger in the
vehicle and there is no evidence that he exercised any ownership or control over the vehicle. In fact, the evidence is to the
contrary, Bellard was the driver and Degree was the owner of the vehicle who permitted Prestridge to conduct the search. 
Accordingly, Prestridge did not ask appellant to consent to the search.

The contraband was neither in close proximity to appellant, nor conveniently accessible to him. Instead, the marihuana was
in the locked trunk of a vehicle which was neither owned nor driven by appellant, and the cocaine was hidden underneath a
seat occupied by Degree. Prestridge testified the odor of the marihuana was not detected until he opened the trunk. There
is no evidence of appellant being present when the trunk was opened prior to Prestridge's search. Additionally, the cocaine
did not exude an odor. Paraphernalia was discovered in Bellard's luggage and underneath the back seat. No contraband or
paraphernalia was found on appellant or in his luggage. In fact, Prestridge admitted that nothing about appellant's luggage
linked him to the contraband. 

Appellant was not intoxicated and his physical condition did not indicate recent consumption of either marihuana or
cocaine. While Prestridge testified appellant appeared more nervous than normal, his nervousness was certainly much less
than that exhibited in either Dixon or Leyva. Dixon, 918 S.W.2d at 680; Leyva, 840 S.W.2d at 760. Therefore, we do not
find that appellant's conduct indicates a consciousness of guilt. (11) Appellant did not attempt to flee. The occupants of the
vehicle gave conflicting statements as to the length of their trip, but that information was not relevant; all of them admitted
they were returning from Houston. Any inconsistences are clearly less than those in Dixon, 918 S.W.2d at 680. Appellant
did not make any affirmative statements connecting himself to the contraband. (12) The vehicle was traveling on an interstate
highway at approximately 8:30 p.m. This is neither a suspicious location nor can appellant's presence in a vehicle on a
public thoroughfare be considered a suspicious circumstance.

Admittedly, the quantity of both the marihuana and cocaine was large. Degree, the owner of the vehicle, occupied the seat
which concealed the cocaine and almost $2,000 in cash, and had $400 on his person. However, appellant had no money on
his person. Prestridge testified the amount of contraband was normally transported by more than one individual. This
testimony would tend to link appellant with the contraband if there were only two occupants of the vehicle. However, the
presence of Bellard and Degree, one being the driver and the other being the owner of the vehicle, both of whom had
personal property connected either with drug paraphernalia or the marihuana, decrease the probative force of this as an
affirmative link for appellant. Also Prestridge's testimony that those who transported large amounts of drugs tended to
travel with weapons does not link appellant to the contraband because Prestridge conceded that it was possible for a person
sitting in the front passenger seat to not know a firearm was underneath, and there were no fingerprints linking appellant to
the firearm. 

Additionally, we do not find appellant made a furtive gesture toward the weapon. The whole of Prestridge's testimony on
this is as follows: Appellant "appeared to be moving around, shuffling inside the car," which created the "possibility of
weapons in the vehicle and either attempting to hide a weapon or maybe making access to a weapon for their - themselves
during the contact." Mere movement by an occupant in a vehicle being stopped by a law enforcement officer, not coupled
with reliable information nor suspicious circumstances, does not give rise to probable cause to search of the vehicle. 
Wilson v. State, 511 S.W.2d 531, 535 (Tex. Crim. App. 1974); Thomas v. State, 762 S.W.2d 721, 723 (Tex. App.- Houston
[1st Dist.] 1988, no pet.) ("Furtive movements or gestures alone are insufficient evidence to prove guilt.") (citing Smith v.
State, 542 S.W.2d 420, 422 (Tex. Crim. App.1976)). As noted above, there was nothing suspicious about these
circumstances; Prestridge did not possess reliable information related to either the contraband or the weapon, and there is
no showing appellant knew the weapon was present. In support of its furtive gesture argument, the State cites DeLaGarza
v. State, 898 S.W.2d 376 (Tex. App.-San Antonio 1995, no pet.), and Hernandez v. State, 867 S.W.2d 900 (Tex.
App.-Texarkana 1993, no pet.). However, those cases are not persuasive; DeLaGarza does not involve a vehicular stop,
and in Hernandez the defendant had been in sole possession of the vehicle for at least twenty-four days. DeLaGarza, 898
S.W.2d at 379; Hernandez, 867 S.W.2d at 904.

Finally, we come to the three pair of tennis shoes in the trunk. While there was evidence that two pair of shoes were size
14, which was the size of shoe worn by Degree, there is no proof of appellant's shoe size. Without such proof, we will not
assume the third pair of shoes belonged to appellant, or much less that appellant placed them there at a time when the
marihuana was present. Therefore, there is nothing to show appellant had a special connection to the contraband.

When these factors are viewed in the light most favorable to the prosecution, we hold the evidence is insufficient to
establish appellant possessed the contraband alone. Moreover, when the evidence is viewed in that same light, we hold the
evidence is insufficient to prove appellant had the intent to promote or assist the offense by soliciting, encouraging,
directing, aiding, or attempting to aid the other person in the commission of the offense. The evidence does not link
appellant to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused
knew of the contraband's existence and that he exercised control over it. (13) Accordingly, we sustain the first and third
points of error. (14)

The judgments of the trial court in cause numbers 10,887 and 10,888 are reversed and a judgment of acquittal entered in
each cause. Tex. R. App. P. 43.2(c); Burks v. United States, 437 U.S. 1, 18 (1978); Greene v. Massey, 437 U.S. 19, 24
(1978).

 

CHARLES F. BAIRD

Justice


Publish. 

Tex. R. App. P. 47.3.


Opinion delivered and filed this the

19th day of April, 2002.

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme
Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).
2. When the narcotics are secreted, the State must address whether the defendant knew of the existence
of the secret place and its contents. Vargas v. State, 883 S.W.2d 256, 263 (Tex. App.-Corpus Christi
1994, pet. ref'd).
3. Excessive nervous behavior and unsettled demeanor may be examples of consciousness of guilt. Leyva v. State, 840
S.W.2d 757, 760 (Tex. App.--El Paso 1992, pet. ref'd) (after vehicle stopped defendant became "increasingly nervous."). 
The courts have recognized, however, that nervousness is a tenuous link to the contraband because most people are
somewhat nervous when confronted by a police officer. Hernandez v. State, 867 S.W.2d 900, 905 (Tex. App.-Texarkana
1993, no pet.) (citing Glass v. State, 681 S.W.2d 599, 602 (Tex. Crim. App. 1984) ("We believe that in this day and time
that when a citizen is suddenly facing an imminent confrontation with police officers for unknown reasons, most citizens
with nothing to hide will nevertheless manifest an understandable nervousness in the presence of the officer.").
4. Officer Muse did not testify at appellant's trial.
5. Prestridge video taped the stop of the vehicle and his subsequent interrogation of the driver and passengers. A redacted
version of the video was admitted into evidence without objection. The video tape was not transcribed because the trial
judge found the words spoken on the video were not capable of transcription and stated "let the video speak for itself." The
tape was made a part of the appellate record and has been reviewed by the court.
6. Prestridge did not elaborate on the extent or degree of the conflict with the information received from Bellard.
7. Again, Prestridge did not elaborate on the extent or degree of the conflict with the information received from appellant.
8. On the video, Prestridge announces that each occupant is under arrest for unlawfully carrying a weapon.
9. This weapon was discovered by Robert Hancock, the wrecker driver who towed the vehicle from the highway patrol
station to his wrecking yard for storage. The trooper who recovered this weapon stated it was found between the driver's
seat and the center console.
10. The trial court's charge to the jury authorized conviction under either theory, and the jury returned a
general verdict. Therefore, we must determine if the evidence is sufficient to support a finding of guilt
under either theory. If so, the verdict will be upheld. Rabbani v. State, 847 S.W.2d 555, 558 (Tex. Crim.
App. 1992); Fuller v. State, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992).
11. The State contends we "ignore" appellant backing toward Prestridge, but that conduct is duly
chronicled in part II, supra, of this opinion where the facts are summarized. The State also argues that
neither Dixon nor Leyva involve this exact conduct. While that is true, the State is missing the point. We
cite Dixon, Leyva, and the cases in footnote 3, supra, for the accepted proposition that nervous behavior
is a tenuous link. We do note, however, that the cases cited by the State in support of this proposition do
not involve the particular conduct the State claims to be probative in the instant case. Fields v. State,
932 S.W.2d 97, 104 (Tex. App.-Tyler 1996, pet ref'd) (defendant "exhibited unnatural equanimity and
lack of concern throughout the temporary detention and the subsequent investigation."); Trejo v. State,
766 S.W.2d 381, 384 (Tex. App.-Austin 1989, no pet.) (consciousness of guilt mentioned in dicta but
had no application to facts under consideration); Howell v. State, 906 S.W.2d 248, 253 (defendant
stated, "Hey, man, we're busted," dropped spoon which had visible cocaine residue on it and tossed piece
of folded paper containing cocaine.). Because these cases are so easily distinguishable, we do not find them
persuasive.
12. The audio portion of the video tape mentioned in footnote 5, supra, contains a comment in the patrol car in which one
of the defendants says: "I told you when we got on down the road that girl was going to hit me ..." Another defendant
responds: "Yeah." The State argues this is an affirmative link. This argument is faulty in several respects. First, the State
admits the voices are not identified. Accordingly, there is no showing that appellant either made or responded to the
comment. As noted earlier, mere presence is not sufficient to make one a party to joint possession. Oaks, 642 S.W.2d at
177. Similarly, mere presence during a conversation is not sufficient, especially when the defendant's presence was
dictated by police officers who had the defendant in custody. Second, the State argues that from this comment a
"reasonable inference" may be drawn "that there had been a discussion between appellant and his cohorts before they left
Houston to the effect that they believed one of the women they saw in Houston was going to inform on them and that they
believed they had been caught transporting drugs because of that female." This argument is simply not supported by the
record. There is nothing to suggest that any of the defendants had a conversation with any female in Houston regarding the
contraband found in the vehicle. Therefore, this inference is built on pure speculation about an unproven conversation. An
"inference" so derived is not "reasonable." Third, the State's argument is contradicted by the testimony of Prestridge who
stated he stopped the vehicle because it crossed the left lane marker. There is no evidence that Prestridge was relying, in
whole or in part, on a tip from a female informant.
13. The State argues that we have not viewed the evidence in the light most favorable to the prosecution, but that is the only
light in which the evidence can be viewed because appellant did not offer any contrary evidence. The State further agues
that we have ignored the holding in Brown, supra, and have "reached for hypotheses other than appellant's guilt." Such
hyperbole is untrue, and portrays a misunderstanding of what is required of appellate courts when determining whether the
evidence is legally sufficient to support a conviction in a possession case. We have not suggested any other hypotheses; we
have merely reviewed the evidence in the light most favorable to the prosecution, considering the factors previously
catalogued by the Court of Criminal Appeals and our sister courts of appeals which may serve to affirmatively link an
accused to contraband. The Dixon Court reviewed several of these same factors and came to the conclusion that the factors
indicating the defendant "did not have control were not only more numerous but more convincing." Dixon, 918 S.W.2d at
681 (emphasis added). As noted earlier, this type of analysis is the appropriate method of applying the Jackson rationality
standard of review to possession cases. Martinets, 884 S.W.2d at 188. Appellate courts are required to examine and
evaluate the logical force the various factors may have in establishing the elements of the offense. Jones, 963 S.W.2d at
830; Hurtado, 881 S.W.2d at 743;Gilbert, 874 S.W.2d at 298. To accept the State's argument would permit a single factor
indicating guilt to trump any number of other factors which did not tend to establish possession. But that is not our law; the
determination of whether the evidence is sufficient to affirmatively link the accused to the contraband must be made not by
applying some rigid algebraic formula, but on a case by case basis. Whitworth, 808 S.W.2d at 569.
14. We need not address the remaining three points of error. See Tex. R. App. P. 47.1.