In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-232 CR


____________________



L.B. MORRIS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 87651






O P I N I O N


 A jury found L.B. Morris guilty of possessing a controlled substance, namely
codeine (by aggregate weight, including any adulterants and dilutants, in an amount of four
hundred (400) grams or more). See Tex. Health & Safety Code Ann. § 481.118(e)
(Vernon 2003). Morris pleaded true to enhancement allegations and was sentenced by the
trial court to ten years in the Institutional Division of the Texas Department of Criminal
Justice. In two issues, Morris challenges the legal and factual sufficiency of the evidence. 
We affirm.

 During a traffic stop of the vehicle Morris was driving, Officers Leland Keen and
Jerry Dupree determined one of the passengers had an outstanding warrant, arrested that
passenger and in conducting a search of the vehicle for weapons, found styrofoam cups in
the backseat; the cups had residue and a codeine odor. The officers then conducted a full
search and found two more cups in the front with the residue and codeine odor, one of
which was found in the driver's area. Further, they found a plastic Sunkist bottle in
between the driver's and front passenger's seats. The bottle contained a dark orange liquid
with a strong odor of codeine. Also located was a baby food jar with a small amount of
red liquid residue with a codeine odor. Puddles of liquid and ice were found on the back
floorboard and front floorboard at the driver's position.

 We review Morris's challenges to the legal and factual sufficiency under well
established standards. We review the legal sufficiency of the evidence by viewing the
evidence in the light most favorable to the verdict to determine whether, based on that
evidence and reasonable inferences from it, a rational trier of fact could have found the
accused guilty of the elements of the crime beyond a reasonable doubt. Swearingen v.
State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003)(citing Jackson v. Virginia, 443 U.S.
307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ladd v. State, 3 S.W.3d 547, 557 (Tex.
Crim. App. 1999)). In reviewing the factual sufficiency of the evidence, we examine all
the evidence in a neutral light and ask whether proof of guilt is so obviously weak or
greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. 
Swearingen, 101 S.W.3d at 97. In conducting our analysis, we must avoid substituting our
judgment for that of the fact-finder. Id.

 In our legal sufficiency review, we consider first Morris's argument that the
testimony of the State's expert witness did not satisfy the evidentiary requirements of
Section 481.105(1) of the Texas Controlled Substances Act ("Act"). Section 481.105(1)
of the Act provides, in pertinent part, that Penalty Group 4 (1) consists of "a compound,
mixture, or preparation containing limited quantities of . . . [certain] narcotic drugs that
includes one or more nonnarcotic active medicinal ingredients in sufficient proportion to
confer on the compound, mixture, or preparation valuable medicinal qualities other than
those possessed by the narcotic drug alone[.]" Tex. Health & Safety Code Ann. § 481.105
(Vernon 2003). Included in section 481.105 as a controlled substance is any mixture
containing "not more than 200 milligrams of codeine per 100 milliliters or per 100 grams.
. . ." Id. (2)

 Morris complains the State's expert never identified either the nonnarcotic substance
or the nature of its medicinal quality. Further she did not testify as to the sufficiency of
the proportion of this nonnarcotic substance "as required by statute." He also complains
that she did not scientifically measure the amount of codeine but testified only generally
that the codeine was in a substance that typically had no more than 200 milligrams of
codeine per 100 milliliters of syrup. 

 The State's expert witness, a forensic analyst testified that the contents of the bottle
offered into evidence, State's exhibit 1, was "902.4 grams, or approximately 860
milliliters, of codeine - let's see - with one or more nonnarcotic active medicinal
ingredients commonly found in cough syrup preparations which typically contain not more
than 200 milligrams of codeine per 100 milliliters of syrup." When asked whether she was
able to scientifically and reliably determine that the substance contained in State's exhibit
1 contained codeine in an amount of not more than 200 milligrams per 100 milliliters, she
answered "yes." She further testified the weight of the substance was more than 400
grams. (3)
 Defense counsel neither objected to any of the expert's testimony nor asked her
any questions. 

 As defined by the Act, "controlled substance" includes the "aggregate weight" of
any substance containing a controlled substance, regardless of what percentage of the
substance may be a prohibited drug. See Tex. Health & Safety Code Ann.

§ 481.002(5), 481.118 (Vernon 2003 and Supp. 2004); see Melton v. State, 120 S.W.3d
339, 344 (Tex. Crim. App. 2003). As Melton explains, "the State is no longer required
to determine the amount of controlled substance and the amount of adulterant and dilutant
that constitute the mixture." Id. Rather the "State has to prove only that the aggregate
weight of the controlled substance mixture, including adulterants and dilutants, equals the
alleged minimum weight." Id.

 Here, the minimum weight is 400 grams. See Tex. Health & Safety Code Ann.
§ 481.118(e). And the expert testified the bottle containing the controlled substance
mixture weighed 902.4 grams and that the mixture included codeine with "one or more
nonnarcotic active medicinal ingredients commonly found in cough syrup preparations
which typically contain not more than 200 milligrams of codeine per 100 milliliters of
syrup." The State proved that the aggregate weight of the controlled substance mixture
equals the alleged minimum weight. We overrule Morris's argument regarding the expert
witness's testimony.

 To complete our legal sufficiency analysis, we next consider the State's burden in
proving the charged offense. To prove drug possession, the State must show (1) a
defendant exercised care, custody, control, or management over the drugs, and (2) he
knew he possessed a controlled substance. See Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995). An illegal drug can be jointly possessed with others. See Martin
v. State, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988). But mere presence at the scene does
not establish possession; there must be evidence that affirmatively links the accused to the
contraband and shows he had knowledge of and control over it. Id. Although the evidence
used to satisfy these elements may be direct or circumstantial, the State must establish that
the accused's connection with the controlled substance was more than just fortuitous. Brown,
911 S.W.2d at 747. Affirmative links are established by the totality of the circumstances. 
See Hyett v. State, 58 S.W.3d 826, 830-31 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd).

 In determining whether the evidence is sufficient here to affirmatively link the
accused with the controlled substance, we consider certain nonexclusive factors: (4)
 (1)
whether the contraband was in plain view; (2) whether the accused was the owner of the
premises or had the right to possess the place where the contraband was found, or was the
owner or driver of the automobile in which the contraband was found; (3) whether a strong
residual odor of the contraband was present; and (4) whether the contraband was
conveniently accessible to the accused, or found on the same side of the vehicle as the
accused was sitting. See, e.g., Jenkins v. State, 76 S.W.3d 709, 712-13 (Tex. App.--Corpus Christi 2002, pet. ref'd) (footnotes omitted). The number of the factors is not as
important as the logical force the factors have in establishing the elements of the offense.
Jones v. State, 963 S.W.2d 826, 830 (Tex. App.--Texarkana 1998, pet. ref'd).

 The evidence here shows that Morris had multiple affirmative links to the codeine.
Morris was driving the vehicle in which the codeine was found. The styrofoam cups
containing residue were in plain view, as was the bottle containing the codeine mixture. 
The bottle of codeine mixture was in close proximity to Morris; it was found on the front
seat, between the driver and passenger. A codeine odor was present in the cups, including
the one found in the driver's area, and a codeine odor was present in the bottle, as well as
in the liquid/ice mixture that had been poured on the car floorboard at the driver's position. 
Further, as additional factors not enumerated in Jenkins, we note that one of the officers
observed Morris take a drink from a styrofoam cup, and then abnormally dump the contents
on the car floor, and that the contraband was found in a small, enclosed place.

 The evidence links Morris to the codeine mixture in such a manner and to such an
extent that a reasonable inference may arise that the accused knew of the codeine's existence
and that he exercised actual care, control, or custody of it. Brown, 911 S.W.2d at 747. 
Viewing the factors in a light most favorable to the verdict, we conclude the evidence was
legally sufficient to support the conviction. We overrule issue one.

 Having found the evidence legally sufficient, we next review Morris's factual
sufficiency claim. In addition to the evidence that we considered under the legal sufficiency
point of error, we now consider Morris's factual sufficiency arguments and review all of the
evidence in a neutral light that favors neither party. 

 Warren Sheppard, one of Morris's co-defendants, was the only defense witness. He
had already pleaded guilty and been sentenced. Sheppard stated he was sitting in the front
passenger's seat at the time of the traffic stop. He also testified he had a two-liter bottle
containing a codeine syrup/soda mixture. Sheppard maintained he was the only one with a
cup so far as he knew at the time and he did not see the others' cups until the officers pulled
them out of the car. He stated he did not pour any of the mixture into anyone else's cup or
offer any of it to anyone. When he got into Morris's car, Sheppard put the bottle under his
seat. According to Sheppard, no one else in the car knew he had the codeine mixture, and
he did not tell the officers that no one else knew about the mixture because he was "full of
codeine. . . ." 

 Morris argues that, though Officer Keen testified the cups had ice and residue
smelling of codeine, the liquid in the cups was not tested; instead it was poured out and all
that was brought to trial was the cups. However, the cups were not the only evidence
presented by the State. The bottle, which was found in the front of the car, also was
introduced as evidence. The contents of the bottle were tested and determined to contain
codeine. 

 Next, Morris contends that Dupree's report stated he was the one who found the
residue, which conflicts with Keen's testimony that he found it. Dupree's report was not in
evidence, but defense counsel cross-examined Keen about the report. Assuming, without
deciding, that Dupree's report stated he was the one who found the residue, Keen
explained the discrepancy. "[W]e both were assisting each other. [The search] was
conducted by both of us." Maintaining under cross examination that he was the first to see
the residue, Keen stated "First and second is a matter of maybe half a second because
we're both in there looking and [we] see it." As the State maintains, the officers were
conducting a joint search and discovered the evidence almost simultaneously.

 Without record cites, Morris maintains Keen testified there was a large amount of
liquid in the floorboard of the vehicle, but also testified he did not smell any strong odor
coming from the car, even though codeine has a distinctive odor. We need not consider
any argument that omits appropriate citations to the record. See Tex. R. App. P. 38.1(h).

 Morris also complains that while Officer Hancock testified he saw Morris drink
from a cup and then pour its contents out into the car, "[n]o testimony was elicited which
states that any liquid with or without ice was found in the front floorboard or anywhere
else in the front seat area." Morris is incorrect. Officer Keen clearly testified he observed
liquid and ice on the front floorboard at the driver's position. 

 Finally, Morris asserts that Officer Hancock and Officer Keen testified
contradictorily regarding where the bottle was found. Officer Hancock testified the bottle
was found on the floorboard of the front passenger's seat. But, Officer Keen testified he
located a plastic Sunkist bottle in between the driver's and front passenger's seats; the front
car seat was a bench seat, and the bottle was located on the seat where the armrest would
go if it were pulled down. The State does not address this contradiction. However, while
the testimony of the two officers differs on the precise location of the bottle, both clearly
place the bottle in the front part of the car.

 While Sheppard's testimony contradicts that offered by the State and while there
may be some contradiction in the officers' testimony, it is the jury's role to determine the
weight and credibility of the witnesses' testimony. Jones v. State, 944 S.W.2d 642, 648
(Tex. Crim. App. 1996). 

 Unless the available record clearly reveals a different result is appropriate,
an appellate court must defer to the jury's determination concerning what
weight to give contradictory testimonial evidence because resolution often
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.


Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).


 Having considered all of the evidence, we find the proof of guilt is not so obviously
weak or greatly outweighed by contrary proof so as to indicate a manifest injustice has
occurred. Swearingen, 101 S.W.3d at 97. Issue two is overruled.

The trial court's judgment and the conviction of L.B. Morris are AFFIRMED.

 PER CURIAM

Submitted on January 27, 2004 

Opinion Delivered February 4, 2004

Do not publish 


Before McKeithen, C.J., Burgess, and Gaultney, JJ.

1. For the purpose of establishing criminal penalties under the statute, controlled
substances (including any material, compound, mixture, or preparation containing the
controlled substance) are divided into Penalty Groups 1 through 4. See Tex. Health &
Safety Code Ann. § 481.101 (Vernon 2003).
2. A person commits an offense if he "knowingly or intentionally possesses a
controlled substance listed in Penalty Group 4, unless the person obtained the substance
directly from or under a valid prescription or order of a practitioner acting in the course
of practice." Tex. Health & Safety Code Ann.§ 481.118(a) (Vernon 2003). 
3. A Penalty Group 4 possession offense is punishable by imprisonment for life or 
for a term of not more than 99 years or less than five years, and a fine not to exceed
$50,000, if the amount of controlled substance possessed is, by aggregate weight,
including adulterants or dilutants, 400 grams or more. Tex. Health & Safety Code
Ann. § 481.118(e) (Vernon 2003).

4. Other non-exclusive factors may include whether the accused: (1) was found with
a large amount of cash; (2) possessed other contraband when arrested; (3) had
paraphernalia to use the contraband that was in view, or found on the accused; (4) was in
a physical condition indicating recent consumption of contraband in question; (5) indicated,
through conduct, a consciousness of guilt; (6) attempted to flee; (7) made furtive gestures;
(8) had a special connection to the contraband; (9) made incriminating statements
connecting himself to the contraband; (10) was observed in a suspicious area under
suspicious circumstances; and whether (11) the occupants of the premises gave conflicting
statements about relevant matters. Jenkins v. State, 76 S.W.3d 709, 712-13 (Tex. App.--Corpus Christi 2002, pet. ref'd).