In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-082 CR


____________________



HAROLD EUGENE FIELDS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 88575






MEMORANDUM OPINION (1)



 A jury found Harold Eugene Fields guilty of third degree felony possession of
marihuana. See Tex. Health & Safety Code Ann. § 481.121 (Vernon 2003). (2) The
indictment also alleged Fields was a repeat felony offender, an allegation to which Fields
pled "true" after the jury reached its verdict. Fields elected to have the trial court set his
punishment, which the court assessed at ten years' confinement in the Texas Department
of Criminal Justice, Institutional Division. Bringing two issues, Fields challenges the legal
and factual sufficiency of the evidence supporting his conviction for marihuana possession.
 We review challenges to sufficiency of the evidence under established standards. In
determining legal sufficiency, we consider all the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. See Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993)(citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979)). In determining factual sufficiency, we consider all the evidence in
a neutral light and determine whether evidence that supports "the verdict is too weak to
support the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict
is strong enough that the beyond-a-reasonable-doubt standard could not have been met." 
Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004)(citing Zuniga v. State, 144
S.W.3d 477, 486 (Tex. Crim. App. 2004)).

 To prove drug possession, the State must show: (1) a defendant exercised care,
custody, control, or management over the drugs, and (2) he knew he possessed a controlled
substance. See Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). An illegal
drug can be jointly possessed with others. See Martin v. State, 753 S.W.2d 384, 386 (Tex.
Crim. App. 1988). But mere presence at the scene does not establish possession; there must
be evidence that affirmatively links the accused to the contraband and shows he had
knowledge of and control over it. Id. Although the evidence used to satisfy these elements
may be direct or circumstantial, the State must establish that the accused's connection with
the controlled substance was more than just fortuitous. See Brown, 911 S.W.2d at 747. The
State's evidence need not exclude every reasonable hypothesis other than the defendant's
guilt, but must show facts and circumstances that, viewed in the totality of the circumstances,
indicate the defendant's knowledge and control over the drugs. See id. at 748; see Hyett v.
State, 58 S.W.3d 826, 830 (Tex. App.- Houston [14th Dist.] 2001, pet. ref'd). 

 In determining whether the evidence is sufficient to affirmatively link the accused
with the controlled substance, we consider certain nonexclusive factors such as whether the
contraband was recovered from an enclosed place; whether the accused was the driver of the
vehicle in which the contraband was found; or whether the contraband was conveniently
accessible to the accused. (3)
 See, e.g., Jenkins v. State, 76 S.W.3d 709, 712-13 (Tex. App.-
Corpus Christi 2002, pet. ref'd). The number of the factors present in a case is not as
important as the logical force the factors have in establishing elements of the offense. See
Jones v. State, 963 S.W.2d 826, 830 (Tex. App.- Texarkana 1998, pet. ref'd).

 This case involves a traffic stop on Interstate-10. After officers observed Fields
committing traffic violations, they stopped the vehicle and asked him for identification. 
Instead of a driver's license, Fields presented an identification card. He explained he
recently had gotten his driver's license back after a suspension, but did not have the license
with him. While Fields was explaining his lack of a driver's license, he appeared visibly
nervous; his voice was shaky and his lips were quivering as he spoke. Though the
temperature was cool and the officers were wearing jackets, Fields had beads of sweat on his
forehead and facial spasms. The more the officers talked with Fields, the more nervous he
became. When the officers requested consent to search the vehicle, Fields' eyes welled up
and, according to the officers, appeared as if he were going to cry. 

 In addition to their observations, the officers learned certain relevant facts. Fields and
his passenger, Kenneth Lewis, told inconsistent stories about their trip. Fields said he had
a job interview in Lake Charles while Lewis said they were going to gamble in Lake Charles
and New Orleans. When asked who was the vehicle's registered owner, Fields said it was
owned by his uncle, Calderon Hart. When asked for proof of vehicle insurance, Fields
provided a vehicle rental agreement. The rental agreement showed Carlton Holt had rented
the vehicle and was the only approved driver. Neither Fields nor Lewis were identified in
the agreement. In addition, the rental payment was paid in cash. According to one of the
officers, it is not unusual during drug interdiction stops to find that the driver of the vehicle
is not listed on the lease agreement, or that the rental payment was made in cash, or that the
driver does not have a driver's license with him, or that the driver's license is suspended.

 While the officers were waiting for a response from the police department's dispatch
unit regarding whether the vehicle's occupants had outstanding warrants or traffic violations,
a K-9 unit arrived to search the vehicle. The dog alerted on the area between the rear door
and the right side quarter panel. When the police officer let the dog into the back seat, the
dog jumped on a jacket covering a bag and alerted there. The officers found two bags on the
back seat, one of which contained bundles of marihuana. Fields maintained that the only
item in the back seat he owned was a green bag, not containing marihuana but containing
instead a set of digital scales. The green bag was on the seat next to the other bag that
contained approximately forty-two pounds of marihuana wrapped in bundles. 

 Evidence supporting Fields' sufficiency arguments includes certain testimony from
the officers as well as Fields' trial testimony. 

 According to one of the officers present at the stop, Fields stated he did not know
anything about the bag that contained marihuana. The officers admitted they did not request
forensic testing, such as fingerprints or DNA, to be conducted on the marihuana packaging
material. Further, the green bag owned by Fields contained miscellaneous papers that could
have been resumes and hotel management documents, according to one of the officers. 
These documents could support Fields' statement about going to a job interview. 

 Fields testified in his defense. Fields explained that he and Lewis were going to Lake
Charles to gamble and look for jobs. In preparation for his job hunt, Fields took resumes and
other documents supporting his hotel training. According to Fields, Lewis picked him up in
the car Fields was driving when they were stopped. Fields contended he told police the car
belonged to his uncle because he was nervous. Fields also maintained there was nothing in
the back seat of the car when Lewis picked him up and that he had nothing to do with the
scales. Fields and Lewis first went to Texas City where Fields stayed at a friend's house for
about two hours while Lewis left in the car. When Lewis returned, Fields and Lewis left
Texas City with Fields driving the car. Fields further contended he did not know there was
marihuana in the car and that he had never seen the rental agreement until they were stopped. 
Fields stated he did not sign the agreement, he did not pay any of the rental money, and he
was unaware that no other driver was permitted under the agreement's terms. 

 Under cross-examination, Fields maintained he did not consent to a search because
he had not done anything wrong. Fields further admitted lying when he told officers his
uncle rented the car. Fields contended he made a "mistake in judgment" by failing to tell
the officers after the traffic stop that the marihuana was not his. He conceded his trial
testimony was the first time he informed law enforcement that the marihuana was not his. 

 Here, the evidence establishes that: the drugs were recovered from an enclosed place,
namely the car; Fields was the driver of the vehicle; he was in close proximity to and had
convenient access to the drugs; drug paraphernalia was found in Fields' bag; and Fields and
Lewis gave conflicting statements about the purpose of their trip. See Jenkins, 76 S.W.3d
at 712-13. These facts, along with Fields' attempts to deceive the officers at the traffic stop
scene regarding the vehicle's ownership and his extreme nervousness, affirmatively link him
to the marihuana being transported. 

 When we consider the evidence in the light most favorable to the verdict, we conclude
any rational trier of fact could have found the existence of the essential elements of
marihuana possession beyond a reasonable doubt. We find the evidence to be legally
sufficient and overrule issue one. 

 When we consider all the evidence in a neutral light, we conclude that the evidence
supporting the verdict is not too weak to support the finding of Fields' guilt beyond a
reasonable doubt, and that the evidence contrary to the verdict is not strong enough that the 
beyond-a-reasonable-doubt standard was not met. The contrary evidence is primarily Fields'
own testimony. Thus, the jury heard and observed Fields. In performing a factual
sufficiency review, we defer to the fact finder's determinations, including determinations
involving the credibility and demeanor of witnesses. Zuniga, 144 S.W.3d at 481; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). We may not substitute our judgment
for that of the fact finder's. Zuniga, 144 S.W.3d at 482. We find the evidence to be factually
sufficient and overrule issue two.

 The trial court's judgment and the conviction of Harold Eugene Fields are affirmed.

 AFFIRMED.

 



 _____________________________

 HOLLIS HORTON

 Justice


Submitted on January 26, 2005

Opinion Delivered February 2, 2005 

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Tex. R. App. P. 47.4.
2. Section 481.121(a) of the Texas Health and Safety Code provides in pertinent part:


 (a) Except as authorized by this chapter, a person commits an
offense if the person knowingly or intentionally possesses a
usable quantity of marihuana.


 (b) An offense under Subsection (a) is:

 ....


 (3) a state jail felony if the amount of marihuana possessed is
five pounds or less but more than four ounces[.]


 
3. The nonexclusive factors may include: 


 (1) [w]hether the contraband was in plain view or recovered from an
enclosed place; (2) [t]he accused was the owner of the premises or had the
right to possess the place where the contraband was found, or the owner or
driver of the automobile in which the contraband was found; (3) [t]he
accused was found with a large amount of cash; (4) [t]he contraband was
conveniently accessible to the accused, or found on the same side of the
vehicle as the accused was sitting; (5) [t]he contraband was found in close
proximity to the accused; (6) [a] strong residual odor of the contraband was
present; (7) [t]he accused possessed other contraband when arrested; (8) 
[p]araphernalia to use the contraband was in view, or found on the accused;
(9) [t]he physical condition of the accused indicated recent consumption of
the contraband in question; (10) [c]onduct by the accused indicated a
consciousness of guilt; (11) [t]he accused attempted to flee; (12) [t]he
accused made furtive gestures; (13) [t]he accused had a special connection
to the contraband; (14) [t]he occupants of the premises gave conflicting
statements about relevant matters; (15) [t]he accused made incriminating
statements connecting himself to the contraband; (16) [t]he quantity of the
contraband; and, (17) [t]he accused was observed in a suspicious area under
suspicious circumstances.


See Jenkins v. State, 76 S.W.3d 709, 712-13 (Tex. App.- Corpus Christi 2002, pet. ref'd).