NUMBER
13-06-555-CR

 

                                 COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

                                                                                                                     


 

QUINCY
L. WHITE,                                                                          Appellant,

 

                                                             v.

 

THE
STATE OF TEXAS,                                                                 Appellee.

                                                                                                                                      


 

        On
appeal from the 399th District Court of Bexar County, Texas.

                                                                                                                     


 

                              MEMORANDUM
OPINION

 

                        Before
Justices Yañez, Rodriguez, and Garza

                            Memorandum
Opinion by Justice Yañez

 

After a bench trial, appellant, Quincy Lecurtis
White, was convicted of possession of a controlled substance.[1]  In two issues, appellant asserts the evidence
is legally and factually insufficient to support his conviction.  We affirm.

I. Background








A. Officers=
Testimony

Jesse Allen, a police officer with the San Antonio
Police Department, testified that a confidential informant told him that ACalio was going to be selling rock out of 302 Henry from
a fuse box.@[2]  ACalio@ is appellant=s nickname, an assertion confirmed by appellant at
trial.  A302
Henry@ is the physical address of a known drug house;
testimony revealed that individuals are often seen selling drugs in front of
the home.

When Allen learned of appellant=s plan to sell Arock@ (i.e., cocaine), Allen assembled a team of
officers.  Allen, who was parked
approximately two or three blocks away in a marked patrol vehicle, acted as a Acatch unit.@  Meanwhile,
Officer Cruz Esquivel conducted surveillance of the home at 302 Henry while
sitting in an unmarked vehicle.  From
this location, Esquivel could see a fuse box on the side of the home.  During his surveillance, Esquivel witnessed an
individual walk to the fuse box on two occasions and Amanipulate something within that fuse box.@  He also saw
this same individual perform two or three hand-to-hand transactions, which,
from Esquivel=s experience, is how narcotics are usually
transferred on the streets.  While
Esquivel was not able to identify what, if anything, was transferred hand-to-hand,
he was able to acquire a physical description of the individual, whom he
described as a black male wearing a white muscle shirt and red shorts.








When appellant began walking away from his location
at 302 Henry, Esquivel radioed Allen and informed him of the activity witnessed
and the individual=s location and physical description.  The individual was then confronted by Allen
and other officers A[a]lmost immediately.@  After communicating with Esquivel, Allen
drove toward the individual=s purported location and came across a black male
wearing a white muscle shirt and red shorts, who he recognized as appellant,
based upon past encounters.  When he
pulled-up to appellant in his marked vehicle, appellant Amade a very obvious and overt motion with his hand
to his mouth as if he was placing something in his mouth.@  Allen
instructed appellant to open his mouth; he refused initially, but eventually
complied.  Allen was able to see a Awhite residue around [appellant=s] mouth.@  Officers did
not find drugs on appellant.

Appellant was not the owner of the home at 302
Henry; as a result, officers waited to receive permission from the actual
homeowner before entering the property and opening the fuse box.  Officers maintained watch over the fuse box
the entire time; they verified that appellant was the only individual who came
in contact with the box.  When permission
was acquired, officers opened the fuse box and found a bag containing a
substance that testing later confirmed to be cocaine.

B. Appellant=s
Testimony

Appellant testified that he was near the home at 302
Henry at the time of his arrest.  He was
in the area looking for a friend he had gotten separated from when officers
pulled up to him in a patrol vehicle. 
The officers then began physically abusing him while demanding that he
lead them to drugs.  While appellant did
have $195 on his person, he did not have drugs. 
Officers then took appellant to the home at 302 Henry, where appellant
observed Allen enter the property on three occasions.  On the first two occasions, appellant
observed Allen enter the premises with at least one other officer; searches
were conducted but nothing was found.  On
the third occasion, appellant observed Allen entering the premises by himself
and subsequently announce that he had found drugs.








While appellant was arrested on May 12, 2005, he had
actually met Allen for the first time in January of 2005.  During that month, appellant was driving with
a friend  when he pulled up to a home;
the owner of the home pulled up behind them at the same time.  As the occupants of both vehicles exited,
Allen pulled up in his vehicle and drew his gun upon exiting.  Allen, who allegedly anticipated that a drug
transaction was about to occur between the parties, proceeded to physically
assault appellant=s friend and the homeowner, who was later identified
as a constable who had served in that capacity for over forty years.  Internal Affairs investigated this incident,
and appellant served as a witness against Allen in the course of the
investigation.

After this incident, Allen and other officers began
repeatedly ticketing appellant.  He
received citations on February 20, February 25, February 28, April 25, and May
3.  In addition to these citations, Allen
and other officers consistently taunted appellant in his neighborhood, yelling
to him, AWe are going to get you.  We are going to get you.@  Officers
vocalized their desire Ato intentionally get [appellant] off the streets for
awhile.@

II. Standard of Review








In order to determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.[3]  To determine if the evidence is factually
sufficient, the appellate court reviews all of the evidence in a neutral light.[4]  Then, the reviewing court determines whether
the evidence supporting the verdict is so weak that the verdict is clearly
wrong and manifestly unjust or whether the verdict is against the great weight
and preponderance of the conflicting evidence.[5]  In a bench trial, the trial court, as the
trier of fact, is the exclusive judge of the credibility of the witnesses and
the weight to be given to their testimony.[6]

In cases involving unlawful possession of a
controlled substance, the State must prove that the accused exercised control,
management, or care over the substance and that the accused knew the matter
possessed was contraband.[7]  When the accused is not shown to have had
exclusive possession of the place where the contraband was found, the evidence
must affirmatively link the accused to the contraband.[8]  The Texas Court of Criminal Appeals has
recently stated that the legal issue with respect to such Alinks@ is Awhether there was evidence of circumstances, in
addition to mere presence, that would adequately justify the conclusion that
the defendant knowingly possessed the substance.@[9]








Several factors may help to establish an affirmative
link between the accused and the contraband.[10]  No set formula exists to dictate a finding of
affirmative links sufficient to support an inference of knowing possession of
contraband.[11]  The number of factors present is not as
important as the logical force or the degree to which the factors, alone or in
combination, tend to affirmatively link the accused to the contraband.[12]

III. Analysis

A. Legal Sufficiency

Appellant did not object to Allen=s testimony concerning information provided by the
confidential informant; as a result, that information was offered to prove
appellant=s guilt.  The
out-of-court statements of the informant have sufficient probative value, in
and of themselves, to establish an affirmative link between appellant and the
cocaine found in the fuse box.[13]  But, even putting aside this testimony, the
State established other sufficient affirmative links between appellant and the
drugs.








An affirmative link can be established when the
contraband is hidden in a place tied to the accused.[14]  In the instant case, Allen testified that the
informant had stated that appellant would be selling cocaine located in a fuse
box at 302 Henry; this information informed the trial judge that appellant knew
where the cocaine was hiddenCAan essential component of the culpable act of >possession.=@[15]  Therefore,
the hidden cocaine was tied to appellant at trial.  The cocaine was further tied to appellant
through Esquivel=s testimony that appellant went to the fuse box on
two occasions and manipulated an object inside, and the only object ultimately
found in the fuse box was a bag of cocaine. 
Another factor linking appellant to the contraband is that the cocaine
was conveniently accessible to appellant.[16]  While the cocaine was hidden in such a way as
to be inaccessible to a stranger or casual visitor, it was readily accessible
to anyone who knew its location.[17]  Allen and Esquivel=s testimony established that appellant knew of the
cocaine=s location and that he had convenient access to it.

While recognizing the aforementioned affirmative
links, we also recognize that the cocaine was recovered from a fuse box located
on property not owned by appellant and that there was no evidence that
appellant was responsible for initially placing the cocaine in the fuse
box.  Nevertheless, we observe that the
court of criminal appeals has stated that:








[t]he mere fact that a person other than the accused
might have joint possession of the premises does not require the State to prove
that the defendant had sole possession of the contraband, only that there are
affirmative links between the defendant and the drugs such that he, too, knew
of the drugs and constructively possessed them.[18]

 

Evidence at trial reveals that appellant knowingly
possessed cocaine; it does not support the conclusion that appellant was an
innocent bystander to someone else=s drug operations. 
Accordingly, after viewing the evidence in a light most favorable to the
verdict, we hold that the evidence is legally sufficient to establish that
appellant knowingly possessed the cocaine.

B. Factual Sufficiency

The trial court undoubtedly considered appellant=s testimony concerning the conflict he had been
having with Allen and other officers prior to his arrest.  Before orally pronouncing its judgment, the
trial judge stated:

I don=t have any trouble at all believing that these
officers had told this Defendant more than one time that they were going to get
him, because I think they thought he was one of the dope dealers in their
neighborhood that needed running out of the neighborhood.

 

They testified that they have information from a
reliable and credible informant who had given them information in the past
leading to successful prosecution, that they corroborated that by having
Esquivel watch the place.  I have heard
no evidence that Esquivel even knew this Defendant, much less had anything
against him, and he is the guy that puts it right on the Defendant, saw him
engaged in hand-to-hand transaction, saw him going to the fuse box . . . .

 








AIn deciding whether the evidence is sufficient to
link the defendant to contraband, the trier of fact is the exclusive judge of
the credibility of the witnesses and the weight to be given to their testimony.@[19]  The trial
judge clearly found the officers to be credible and chose to believe their
testimony.  We will not disturb this
decision on appeal.  After viewing all
the evidence neutrally, we hold that the evidence is factually sufficient to
establish that appellant knowingly possessed the cocaine.

III. Conclusion

We overrule appellant=s two
issues on appeal.  Accordingly, we affirm
the trial court=s judgment.

 

 

 

                                                               
                                                                    

LINDA
REYNA YAÑEZ,

Justice

 

 

 

 

Do not publish.  Tex.
R. App. P. 47.2(b).

 

Memorandum opinion
delivered and filed 

this the 24th day of
August, 2007. 











[1] See Tex. Health & Safety Code Ann. ' 481.115(a), (c) (Vernon 2003).





[2] Allen testified that the informant
was reliable, that arrests had been made from information provided by the
informant in the past, and that the informant had assisted the police for four
years.





[3] Jackson v. Virginia, 443 U.S. 307, 324 (1979); Jackson
v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).





[4] Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 10‑11
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407‑08
(Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996).





[5] Watson, 204 S.W.3d at 414‑15;
Johnson, 23 S.W.3d at 10‑11.





[6] Joseph v. State, 897 S.W.2d 374, 376 (Tex. Crim.
App. 1995).





[7] Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim.
App. 2005); Martin v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988).





[8] Pollan v. State, 612 S.W.2d 594, 596 (Tex. Crim. App.
1981).





[9] Evans v. State, 202 S.W.3d 158, 161‑62 n.9
(Tex. Crim. App. 2006).





[10] These factors include, among
others, the following:  (1) whether the
contraband was in plain view; (2) whether the contraband was conveniently
accessible to the accused; (3) whether the accused was the owner of the place
where the contraband was found; (4) whether the accused was the driver of the
vehicle in which the contraband was found; (5) whether the contraband was found
on the side of the vehicle where the accused was sitting; (6) whether the place
where the contraband was found was enclosed; (7) whether the odor of the drug
found was present in the vehicle; (8) whether paraphernalia for use of the
contraband was in view or found on the accused; (9) whether conduct of the
accused indicated a consciousness of guilt; (10) whether the accused had a
special connection to the contraband; (11) whether the occupants of the vehicle
gave conflicting statements about relevant matters; (12) whether the physical
condition of the accused indicated recent consumption of the contraband found
in the vehicle; (13) whether affirmative statements by the accused connected
the accused to the contraband; (14) whether traces of the contraband were
found; (15) whether a large sum of money was found on the accused; and (16) the
amount of contraband found.  No set
formula exists to dictate a finding of affirmative links sufficient to support
an inference of knowing possession of contraband.  Jenkins v. State, 76 S.W.3d 709,
712-13 (Tex. App.BCorpus Christi 2002, pet. ref=d).





[11] Taylor v. State, 106 S.W.3d 827, 831 (Tex. App.BDallas 2003, no pet.).





[12] Jenkins, 76 S.W.3d at 713.





[13] See Poindexter, 153 S.W.3d at 407-09 (holding
that an officer=s testimony that an informant told
him that appellant was selling narcotics out of his residence, when objected
to, constituted probative evidence of appellant=s guilt of possession of crack
cocaine).





[14] Id. at 409 n.24.





[15] Id. at 410.





[16] See id. at 411.





[17] See id. (citing United States v. McGhee,
882 F.2d 1095, 1099 (6th Cir. 1989)).





[18] Id. at 412.





[19] Id. at 406.