NUMBERS 13-07-176-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JUAN ESCATIOLA, Appellant,

 

v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 117th District Court of Nueces County, Texas

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Garza 


Memorandum Opinion by Justice Garza


 After a jury trial, appellant, Juan Escatiola, was convicted of possession of
marihuana, less than fifty pounds and more than five. Tex. Health & Safety Code Ann. §
481.121(b)(4) (Vernon 2003). After finding a habitual felony offender enhancement to be
"true," the trial judge sentenced Escatiola to twenty-five years' imprisonment. See Tex.
Penal Code Ann. § 12.42(d) (Vernon Supp. 2006). Escatiola contests his conviction by two
issues which challenge the sufficiency of the evidence. We affirm.

I. BACKGROUND

 On September 18, 2006, an investigation conducted by the Texas Department of
Public Safety and the United States Border Patrol uncovered a package containing 18.16
pounds of marihuana at a Federal Express hub in Pharr, Texas. The package was
addressed to "Carlos Garza" at 615 25th Street, Corpus Christi, Texas, and the return
address indicated it was sent from "Junle Martinez," 2401 17th Street, McAllen, Texas. (1) 
The next morning, officers set up surveillance at the Corpus Christi address. One officer
observed Juan Escatiola, who lived at the Corpus Christi address, leaning on the
residence's front fence, talking on his cell phone, and looking up and down the street.

 That afternoon, around 2 p.m., Officer Corey Lee, dressed as a Federal Express
delivery man, delivered the package containing marihuana to the residence. While the
officer approached the porch, Escatiola walked out of the house and down towards the
officer. Officer Lee asked Escatiola, "Are you Mr. Garza?" and Escatiola nodded and said
"yes." The officer then asked, "Carlos Garza?" and Escatiola again nodded and said "yes." 
At trial, Officer Lee testified that he asked Escatiola to sign for the package. Escatiola
signed "Carlos G." The officer observed that Escatiola seemed nervous when he tried to
sign for the package. (2) After Escatiola signed, Officer Lee returned to the Federal Express
van in which he arrived and left the residence. The officers who were conducting
surveillance on the house observed a Suburban pull up to the house. They saw Escatiola
load the package that had just been delivered into the Suburban. The Suburban then drove
away. Escatiola left in another car.

 The Suburban was stopped by officers soon after leaving the residence. The driver
of the Suburban was Escatiola's neighbor, Robert Soliz. The package of marihuana was
found in Soliz's Suburban. Officers also stopped Escatiola. Both Escatiola and Soliz were
arrested and indicted for possession of marihuana.

 In addition to the testimony given by Officer Lee, the jury heard testimony from
Melissa Sotelo Garza, the niece of Escatiola. Garza testified that she arrived at Escatiola's
residence around 8:30 that morning and stayed until after the package was delivered. 
Garza testified that Soliz was also at Escatiola's home that morning. Garza recalled seeing
Soliz parked in the front of the house, waiting for a package. According to Garza, Soliz and
Escatiola sat in Soliz's Suburban until about 10:30 or 11:00 a.m. Soliz then left the home
to pick up either his wife or his wife's paycheck. (3) She testified that before Soliz left, he
asked Escatiola to accept a package for him; Escatiola agreed. Garza testified that the
package arrived while Soliz was gone. She stated that when Soliz returned, Soliz picked
up the package from the driveway, put it in his Suburban, and drove away.

 After hearing all of the testimony, a jury convicted Escatiola of possession of
marihuana and the trial court sentenced him to twenty-five years' imprisonment. This
appeal ensued.

II. DISCUSSION


A. Standard of Review


 When reviewing the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App.
2003). This standard is applicable in both direct and circumstantial evidence cases. 
Chambers v. State, 711 S.W.2d 240, 244-45 (Tex. Crim. App. 1986). We are not fact
finders; our role is that of a due process safeguard, ensuring only the rationality of the trier
of fact's finding of the essential elements of the offense beyond a reasonable doubt. See
Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

 When reviewing the factual sufficiency of the evidence, we view all the evidence in
a neutral light, favoring neither party. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We will set the
verdict aside only if: (1) the evidence supporting the conviction, although legally sufficient,
is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly
unjust; or (2) the verdict is against the great weight and preponderance of the evidence. 
Watson, 204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App
2000). We cannot conclude that a conviction is clearly wrong or manifestly unjust simply
because we would have voted to acquit. Watson, 204 S.W.3d at 417. In other words, we
may not simply substitute our judgment for the fact-finder's judgment. Johnson, 23 S.W.3d
at 12. To reverse for factual sufficiency, we must determine, with some objective basis in
the record, that the great weight and preponderance of the evidence contradicts the verdict. 
Watson, 204 S.W.3d at 417. In examining a factual sufficiency challenge, we defer to the
fact-finder's determination of the credibility of the evidence. Swearingen v. State, 101
S.W.3d 89, 97 (Tex. Crim. App. 2003).

B. Analysis

 To support a conviction for possession of more than five but less than fifty pounds
of marihuana, the State must prove Escatiola: (1) exercised control, management, or care
over the substance; and (2) had knowledge that the matter possessed was contraband. 
Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005) (citing Joseph v. State,
897 S.W.2d 374, 376 (Tex. Crim. App. 1995); Martin v. State, 753 S.W.2d 384, 387 (Tex.
Crim. App. 1988)).

 When the accused is not in exclusive possession of the place where the controlled
substance is found, the State must prove additional independent facts and circumstances
that affirmatively link the accused to the contraband in such a way that it can be concluded
that the accused had knowledge of the contraband and exercised control over it. 
Poindexter, 153 S.W.3d at 406; Naquin v. State, 607 S.W.2d 583, 586 (Tex. Crim. App.
1980). Circumstantial evidence alone may prove affirmative links; however, proof that
creates only a strong suspicion or even a probability will not suffice. Jenkins v. State, 76
S.W.3d 709, 712 (Tex. App.-Corpus Christi 2002, pet. ref'd). Affirmative links protect the
innocent bystander and establish "that the accused's connection with the drug was more
than just fortuitous." Poindexter, 153 S.W.3d at 406; Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).

 Courts have identified a number of factors that may help show an affirmative link to
controlled substances. See, e.g., Poindexter, 153 S.W.3d at 406; Jenkins, 76 S.W.3d at
712-13; Lassaint v. State, 79 S.W.3d 736, 740 (Tex. App.-Corpus Christi 2002, no pet.);
Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). The
following is a non-exclusive list of factors that has been found to affirmatively link a
defendant to contraband: (1) whether the contraband was in plain view or recovered from
an enclosed place; (2) the accused was the owner of the premises or had the right to
possess the place where the contraband was found, or was the owner or driver of the
automobile in which the contraband was found; (3) the accused was found with a large
amount of cash; (4) the contraband was conveniently accessible to the accused, or found
on the same side of the vehicle as the accused was sitting; (5) the contraband was found
in close proximity to the accused; (6) a strong residual odor of the contraband was present;
(7) the accused possessed other contraband when arrested; (8) paraphernalia to use the
contraband was in view, or found on the accused; (9) the physical condition of the accused
indicated recent consumption of the contraband in question; (10) conduct by the accused
indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused
made furtive gestures; (13) the accused had a special connection to the contraband; (14)
the occupants of the premises gave conflicting statements about relevant matters; (15) the
accused made incriminating statements connecting himself to the contraband; (16) the
quantity of the contraband; and (17) the accused was observed in a suspicious area under
suspicious circumstances. Jenkins, 76 S.W.3d at 712-13; Lassaint, 79 S.W.3d at 741. The
court determines whether the evidence is sufficient to affirmatively link the accused to the
contraband on a case by case basis. Jenkins, 76 S.W.3d at 713, Lassaint, 79 S.W.3d at
741; Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.-Austin 1991, pet. ref'd). The
"logical force" the factors create to prove the defendant knowingly possessed the controlled
substance is more important than the number of factors present. Jenkins, 76 S.W.3d at
713; Lassaint, 79 S.W.3d at 741; Jones v. State, 963 S.W.2d 826, 830 (Tex.
App.-Texarkana 1998, pet. ref'd); Hurtado v. State, 881 S.W.2d 738, 743 (Tex.
App.-Houston [1st Dist.] 1994, pet. ref'd); Gilbert v. State, 874 S.W.2d 290, 298 (Tex.
App.-Houston [1st Dist.] 1994, pet. ref'd). The defendant's actions toward the contraband
or the police may be considered an affirmative link. Payne v. State, 480 S.W.2d 732, 734
(Tex. Crim. App. 1972); Granados v. State, 843 S.W.2d 736, 740 (Tex. App.-Corpus Christi
1992, no pet.).

 In the light most favorable to the verdict, the record shows the following affirmative
links between Escatiola and the marihuana: the package containing marihuana was shipped
to Escatiola's address; Escatiola was seen outside his home, talking on his cell phone and
looking down the road the morning of the delivery; Escatiola and Soliz talked about the
expected package and Escatiola agreed to accept it; Escatiola signed for the package;
when Escatiola signed for the package, his hand was shaking and he was visibly nervous;
Escatiola accepted the package by signing the name "Carlos G."; Soliz arrived almost
immediately after the package was accepted by Escatiola and Escatiola loaded the package
into Soliz's truck; and police recovered the package from Soliz's truck after he left
Escatiola's residence. Additionally, when accepting the package, Escatiola twice identified
himself as "Carlos Garza." Based on these facts, a rational trier of fact could have found
beyond a reasonable doubt that Escatiola possessed marihuana. Accordingly, we conclude
that the evidence is legally sufficient to support Escatiola's conviction for possession. Escatiola also argues that the evidence is factually insufficient to establish an
affirmative link between him and the marihuana. Escatiola asserts that the only evidence
connecting the marihuana to him was that it was delivered to his address and that he signed
for the package under the name of "Carlos G." rather than his own. After reviewing all of
the evidence in a neutral light, we cannot conclude that the evidence is so weak that the
fact-finder's determination is clearly wrong or manifestly unjust. Watson, 204 S.W.3d at
414-15. Nor can we conclude that the great weight and preponderance of the evidence
contradicts the jury's verdict. Id. at 417. A rational juror could have concluded beyond a
reasonable doubt that Escatiola knew that the package he accepted contained marihuana
and exercised control, management, or care over it. We therefore conclude the evidence
is factually sufficient to support Escatiola's conviction.

 Accordingly, we overrule Escatiola's first and second issues.

III. CONCLUSION

 Having overruled Escatiola's issues on appeal, the judgment of the trial court is
affirmed.

 _________________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 23rd day of August, 2007.
1. Investigators later discovered that the shipper's address did not exist.
2. Officer Lee testified that he handed Escatiola a scantron to sign in a way where Escatiola could sign it, but
Escatiola still flipped it around trying to figure out where to sign. While Escatiola held the scantron, the officer
observed Escatiola's hand shaking.
3. When Soliz was stopped by authorities that afternoon, there was a woman in the vehicle with him that an
officer thought was Soliz's wife.