PD-0967-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/20/2015 3:55:35 PM
Accepted 11/20/2015 4:40:34 PM
ABEL ACOSTA
CLERK

PD-0967-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

AUSTIN, TEXAS

_____

GENARO GALVAN ACOSTA, JR.,

Appellant,

vs.

THE STATE OF TEXAS,

Appellee.

_____

PETITION FOR DISCRETIONARY REVIEW FROM THE COURT OF APPEALS

THIRTEENTH COURT OF APPEALS DISTRICT, CORPUS CHRISTI, TEXAS

CAUSE NUMBER 13-14-00415-CR

_____

APPELLEE'S PETITION FOR DISCRETIONARY REVIEW

_____

EDWARD F. SHAUGHNESSY III
Attorney-at-Law
206 E. Locust
San Antonio, Texas 78212
(210) 212-6700
(210) 212-2178 (fax)
SBN 18134500
Shaughnessy727@gmail.com

Attorney for the Appellee

FILED IN
COURT OF CRIMINAL APPEALS

November 20, 2015

ABEL ACOSTA, CLERK

TABLE OF CONTENTS

PAGE(S)

APPELLEE'S PETITION FOR DISCRETIONARY REVIEW............................................iii

TABLE OF INTERESTED PARTIES.................................................................iv

TABLE OF AUTHORITIES..........................................................................v

STATEMENT REGARDING ORAL ARGUMENT...................................................vi

AUTHORITIES IN SUPPORT OF APPELLEE'S PETITION
FOR DICRETIONARY REVIEW.....................................................................1

NATURE OF THE CASE............................................................................1

PROCEDURAL HISTORY OF THE CASE...........................................................2

REASONS FOR REVIEW............................................................................3

GROUND FOR REVIEW.............................................................................4

ARGUMENT AND AUTHORITIES IN SUPPORT
OF THE GROUND FOR REVIEW....................................................................4

CONCLUSION AND PRAYER.......................................................................10

CERTIFICATE OF SERVICE.......................................................................10

CERTIFICATE OF COMPLIANCE..................................................................12

APPENDIX .........................................................................................13

PD-0967-15

| | | |
|---|---|---|
| GENARO GALVAN ACOSTA JR., | § | IN THE COURT OF |
| Appellant, | § | |
| | § | |
| | § | |
| vs. | § | CRIMINAL APPEALS |
| | § | |
| | § | |
| | § | |
| THE STATE OF TEXAS, | § | AUSTIN, TEXAS |
| Appellee. | § | |

_____

PETITION FOR DISCRETIONARY REVIEW OF CAUSE NUMBER
13-14-00415-CR IN THE COURT OF APPEALS FOR
THE THIRTEENTH COURT OF APPEALS DISTRICT OF TEXAS
CORPUS CHRISTI, TEXAS
_____

APPELLEE'S PETITION FOR DISCRETIONARY REVIEW

Now comes, Edward F. Shaughnessy, III, Attorney-at-Law, on behalf of the appellee, The State of Texas, and prays that a Petition for Discretionary Review be granted to the appellee in the above styled and numbered cause. The arguments in support of that request are provided hereinafter and are incorporated by reference.

EDWARD F. SHAUGHNESSY III
Attorney-at-Law
206 E. Locust
San Antonio, Texas 78212
(210) 212-6700
(210) 212-2178 (fax)
SBN 18134500

Shaughnessy727@gmail.com

Attorney for the Appellee

TABLE OF INTERESTED PARTIES

Joel Johnson..............................................................Trial Judge
156th District Court
Live Oak County

Michelle Ochoa.........................................................Defendant's Trial Counsel
331A North Washington
Beeville, Texas 78102
(361) 358-1925

James Sales...............................................................State's Trial Counsel
District Attorney's Office
156th Judicial District
111 S. St. Mary's No. 203
Beeville, Texas 78102

Travis Berry...............................................................Defendant's Appellate Counsel
P.O. Box 6333
Corpus Christi, Texas 78466
(361) 442-2562

Edward F. Shaughnessy............................................State's Appellate Counsel
206 E. Locust
San Antonio, Texas 78212
(210) 212-6700

TABLE OF AUTHORITIES

STATE CASES

*Evans v. State, 202 S.W.3d 158 (Tex. Crim. App. 2006)*......................................................9

*Poindexter v. State, 153 S.W.3d 402 (Tex. Crim. App. 2005)*.............................................9

UNITED STATES CASE

*Jackson v. Virginia, 443 U.S. 307* ....................................................................................8


RULES

*Rule 66.3 (c), Tex. R.  App. Proc*.........................................................................................3

*Rule 66.3(e), Tex. R. App. Proc*........................................................................................3,9

STATEMENT REGARDING ORAL ARGUMENT

Counsel for the appellee would submit that in the event that this petition is granted, oral argument would be warranted inasmuch as the issue to be resolved by this Court is novel and worthy of oral argument on the issue presented.

PD-0967-15

GENARO GALVAN ACOSTA JR.,        §                IN THE COURT OF

Appellant                        §

vs.                              §                CRIMINAL APPEALS

THE STATE OF TEXAS,              §

                                                  AUSTIN, TEXAS,

Appellee

ARGUMENTS AND AUTHORITIES IN SUPPORT
OF THE APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
OF CAUSE NUMBER 13-14-00415-CR

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

NOW COMES, The State of Texas, appellee in the lower Court, by and through, Edward F. Shaughnessy, III, attorney at law, and offers the following arguments and authorities in support of The State of Texas' request that this Court grant a Petition for Discretionary Review in the instant case, cause number PD-0967-15.

NATURE OF THE CASE

The appellant, Genaro Galvan Acosta Jr., was indicted by a Live Oak County Grand jury for the offense of Possession of Marijuana (five to fifty pounds) in cause number L-13-0096-CR-B. The appellant was tried before a jury in the 156th District Court of Live Oak County and convicted of the offense as charged in the indictment. The trial Court assessed punishment at twelve years of confinement in the Texas

1

Department of Criminal Justice-Institutional Division. The appellant subsequently appealed the judgment of the trial Court to the Thirteenth Court of Appeals, Corpus Christi. That court reversed the judgment of the trial court, and rendered a judgment of acquittal in an unpublished opinion, authored by Justice Garza on July 9, 2015. This court has granted the appellant an extension of time to file the instant petition until September 9, 2015.

## PROCEDURAL HISTORY OF THE CASE IN THE LOWER COURT

On July 9, 2015, the Corpus Christi Court of Appeals, in a unpublished opinion, authored by Justice Garza, reversed the judgment of the trial court and rendered a judgment of acquittal. That court upheld the contention, raised by the appellant, that the evidence was legally insufficient to support the judgment of conviction. See: *Acosta v. State, (No. 13-14-00415-CR, Tex. App.-Corpus Christi, July 9, 2015)* (Appendix A) The appellee subsequently filed a Motion for Extension of Time to File a Petition for Discretionary Review with the Court of Criminal Appeals. That motion was granted, and the appellee was granted an extension of time to file a Petition for Discretionary Review until September 9, 2015. This pleading is filed in compliance with this Court's order granting that extension of time. The appellee would submit that there exists a single ground for review that warrants review by this Court. It is urged by the appellant that there exist, at a minimum, two distinct reasons for reviewing the action of the Court of Appeals for the Thirteenth Court of Appeals District.

2

REASONS FOR REVIEW

A.

The appellee respectfully petitions this Honorable Court to grant this Petition for Discretionary Review pursuant to *Rule 66.3 (c), Tex. R. App. Proc.* which states that one of the non-exclusive reasons for this Court to grant a petition for discretionary review is that the Court of Appeals has decided an important question of state law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals. The appellee would respectfully submit that the opinion of the Thirteenth Court of Appeals is in conflict with the applicable decisions of this Court.

B.

The appellee respectfully petitions this Honorable Court to grant this Petition for Discretionary Review pursuant to *Rule 66.3(e), Tex. R. App. Proc.* which states that, one of the non-exclusive reasons for this Court to grant a discretionary review, is that the justices of a court of appeals have disagreed on a material question of law necessary to the court's decision. The appellee would submit that the Justices of the Thirteenth Court of Appeals disagreed on a material question of law necessary to the Court's decision.

GROUND FOR REVIEW


THE COURT OF APPEALS ERRED IN HOLDING THAT A
REASONABLE TRIER OF FACT COULD NOT HAVE CONCLUDED
BEYOND A REASONABLE DOUBT THAT THE APPELLANT WAS
SHOWN BY THE EVIDENCE TO HAVE POSSESSED THE CONTRABAND
THAT FORMED THE BASIS FOR HIS CONVICTION.


ARGUMENT AND AUTHORITIES
IN SUPPORT OF THE GROUND
FOR REVIEW


STATEMENT OF APPLICABLE FACTS


On November 14, 2013 the appellant was indicted by a Live Oak County grand jury.  The indictment reads in pertinent part as follow: "...the defendant on or about the 24th day of August, 2013...did then and there intentionally or knowingly possess a usable quantity of marihuana in an amount of 50 pounds or less but more than five pounds."  (C.R.-5)  In support of the allegations in the indictment, the prosecution brought forth two members of the Texas Department of Public Safety: Trooper Jose Prado and Trooper Raul Garcia.


4

## TROOPER JOSE PRADO

Prado related that on August 24, 2013 he was patrolling on U.S. Highway 281 in Live Oak County when he had the occasion to conduct a traffic stop of a vehicle being operated by the appellant, Genaro Acosta. (R.R.2-70) According to Prado, the vehicle being driven by Acosta was going 88 miles per hour in a 75 miles per hour traffic zone. (R.R.2-70) Upon making contact with Acosta, Prado observed him to be in in an extremely nervous state. Acosta was also operating the vehicle without a valid driver's license. (R.R.2-71, 72) When Prado inquired of the nature of Acosta's travel plans, he was informed that Acosta and his family were traveling from Pharr to Fort Worth and planning on returning the same day. (R.R.2-73) Prado determined that the vehicle being operated by Acosta did not belong to Acosta or to his wife. (R.R.2-73) Prado related that it is common for individuals that are transporting drugs to use a "third-party" vehicle such as the one being operated by Acosta. In addition, the ignition key in the vehicle was the only key on the key chain, once again a fact indicative of a "third-party" vehicle. After making these observations Prado asked permission of the appellant to conduct a search of the vehicle. Consent was thereafter granted by Acosta, and a search of the vehicle ensued. (R.R.2-75)

Found inside the vehicle were a number of items that Prado identified as those associated with the transportation and trafficking of narcotics. Prado described those items as the Bible, a good luck charm in the purse of the appellant's spouse (a "Santa Muerta" card) and some good luck herbs found in

two places in the vehicle. (R.R.2-76, 77) After inspecting the interior of the vehicle, Prado conducted an inspection of the exterior of the vehicle. During the inspection of the exterior, Prado determined that the spare-tire, located beneath the chassis of the vehicle, was not of the same size as the wheels on the vehicle. (R.R.2- 79) Prado also related that the spare tire appeared to have recently placed on the underside of the vehicle. (R.R.2-80) After discovering these facts, Prado decided to inspect the interior of the spare tire. After gaining access to the interior of the spare tire Prado discovered the marijuana that led to the arrest of Acosta. (R.R.2-81)

Following the arrest of the appellant, he was "Mirandized" by the troopers and asked if he understood his rights as had been administered to him. (R.R.2-85) At that point the appellant informed the officers (in Spanish): "I don't want my family to be here. If I take the fall will you let them go?" (R.R.2-85)


TROOPER RAUL GARCIA


Garcia was serving as the training officer for Prado at the time of the stop, search and arrest of the appellant. (R.R.2-122) He related to the jury that at the outset of the contact between Prado and Acosta, the appellant appeared to be very nervous and fidgety. The appellant was speaking almost continuously and in a very fast fashion. Garcia was of the belief that the appellant's behavior was abnormal for the circumstances. (R.R.2-120) Due to the degree of nervousness

6

displayed by Acosta, Garcia took a more active role in the ongoing investigation. He related that he conducted interviews of the appellant and his spouse to determine whether their respective versions of their trip were consistent. They were not, and Garcia believed that to be an indication of drug trafficking. (R.R.2-127) Garcia elaborated on the significance of the "Santa Muerta" charm found in the purse of the appellant's wife. He described it as a charm carried by drug traffickers to ensure a safe journey. (R.R.2-128) He also related that the tire that contained the marijuana was malfunctioning in terms of balance, which was a sign that there was something contained within the tire. (R.R.2-131)

DISPOSITION IN THE COURT BELOW

Following the conviction and the attendant sentence of twelve years of confinement in the Texas Department of Criminal Justice-Institutional Division the appellant appealed his conviction to the Court of Appeals for the Thirteenth District of Texas. He pursued a single allegation of error on direct appeal: that the evidence was legally insufficient to demonstrate that he intentionally or knowingly possessed the marijuana found in the spare tire of the vehicle that he found to be driving on the date alleged in the indictment. The Court below sustained the appellant's allegation that the evidence was legally insufficient and order that the judgment reflect an acquittal. The Court reasoned that:

> "The only probative evidence that we find in the record tending to establish an affirmative link between Acosta and the contraband are the undisputed facts that (1) he was found in the same car as the contraband, and (2) he offered to accept responsibility if the officers would let

7

his family go. There was no direct evidence establishing Acosta's knowledge of the contraband in the vehicle—for example there were no fingerprints collected from the bundles, the spare tire, or the tool used to access the tire—and there was no direct or circumstantial evidence establishing that Acosta was present when the drugs were loaded in the car. Moreover, police did not interview or even investigate the identity of the registered owner of the vehicle. And, it is undisputed that, although Acosta appeared nervous during the traffic stop, he answered the officers' questions and cooperated with them fully". *Acosta v. State, at slip op. pg. 15.*

The Court concluded that a reasonable trier of fact could not have concluded beyond a reasonable doubt that Acosta's possession of the marihuana "more than just fortuitous". They court went on to state that the even when the evidence was viewed in the light most favorable to the verdict, the evidence demonstrated nothing more mere suspicion or a mere probability that the appellant exercised care, custody, control or management of the contraband found in the vehicle. *Acosta v. State, at slip op. pg. 17.*

It is significant to note that the opinion of the Court below was not unanimous on the sole question presented by the appellant. In a dissent Justice Perkes wrote:

> "Each piece of evidence is not dispositive by itself. However, when weighing the cumulative effect of the evidence, I believe that the jury could have reasonably found, based on the circumstantial evidence coupled with the reasonable inferences from it, that appellant exercised sufficient care, custody, control or management over the marijuana."
> *Acosta v. State, dissent op. pg. 3.*

The appellee would respectfully that then holding of the Thirteenth Court of Appeals is in conflict with the applicable opinions of this Court on the question of how to address and decide an allegation that the prosecution had failed to satisfy the requirements of *Jackson v. Virginia, 443 U.S. 307 (979)* regarding the issue of what constitutes "possession" in a prosecution for possession of a controlled substance. The

controlling opinions of this Court on this issue were relied upon by the prosecution in the appeal to the Thirteenth Court of Appeals. Those holdings are *Evans v. State, 202 S.W.3d 158 (Tex. Crim. App. 2006) and Poindexter v. State, 153 S.W.3d 402(Tex. Crim. App. 2005)*. It is the appellee's position that the holding of the Thirteenth Court of Appeals is in irreconcilable conflict with this Court's holdings in *Evans and Poindexter*. The distinctions that the Court below sought to draw between the facts in the instant case and the facts supporting the holdings in *Evans* and *Poindexter* are not so substantial as to warrant the conclusion reached by the lower Court; that no reasonable trier of fact could have concluded, based upon what the State did present in terms of evidence linking the appellant to the contraband, that the appellant "possessed" the contraband in question.

Consequently the opinion of the Court below is in conflict with the applicable decisions of this Court and a review of that holding is warranted. See: *Rule 66.3(c), supra*.

As noted above, the opinion of the Court below was not unanimous. Justice Perkes dissented to the holding of the Court on the grounds that the holding of the majority failed to properly account for this Court's holding in *Evans v. State, supra*. The dissenting opinion accurately reflects what the appellee would submit constitutes a proper resolution of the appellant's contention that the evidence was legally insufficient to support the conviction.

As a consequence, the justices in the court below have disagreed upon a material question of law necessary to a disposition of the case. Review by this Court is therefore warranted. See: *Rule 66.3 (e), supra*.

9

CONCLUSION AND PRAYER

It is respectfully requested, by the appellee, that a Petition for Discretionary Review to the Thirteenth Court of Appeals be granted and that the case be briefed on the merits of the appellee's ground for review, with argument to follow.

Respectfully submitted,


/s/ Edward F. Shaughnessy, III
EDWARD F. SHAUGHNESSY, III
Attorney at Law
206 E. Locust
San Antonio, Texas 78212
(210) 212-6700
(210) 212-2178 (fax)
SBN 18134500
Shaughnessy727@gmail.com

Attorney for the appellee

CERTIFICATE OF SERVICE

I, Edward F. Shaughnessy, III., certify that a copy of the foregoing petition was mailed to Travis Berry, attorney for the appellant, at P.O. Box 6333, Corpus Christi, Texas, 78466 on this the _8__ day of September, 2015.

/s/ Edward F. Shaughnessy, III

Edward F. Shaughnessy, III


CERTIFICATE OF SERVICE

I, Edward F. Shaughnessy, III certify that a copy of the foregoing petition was mailed to Lisa McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711, on this the _8__ day of September, 2015.

/s/ Edward F. Shaughnessy, III

Edward F. Shaughnessy, III.

CERTIFICATE OF COMPLIANCE

I, Edward F. Shaughnessy, III hereby certify that the instant pleading is composed of 2825 words, exclusive of the attached appendix.

/s/ Edward F. Shaughnessy, III

Edward F. Shaughnessy, III

APPENDIX



NUMBER 13-14-00415-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GENARO GALVAN ACOSTA JR.,                                    Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

### On appeal from the 156th District Court
### of Live Oak County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides and Perkes
### Memorandum Opinion by Justice Garza

Appellant, Genaro Galvan Acosta Jr., was convicted of possession of fifty pounds or less but more than five pounds of marihuana, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(4) (West, Westlaw through Ch. 46, 2015 R.S.). After finding an enhancement paragraph true, the trial court sentenced him to twelve years' imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(a) (West, Westlaw through Ch.

46, 2015 R.S.). By a single issue on appeal, Acosta argues that the evidence adduced at trial was insufficient to support the conviction. Because we agree, we reverse and render judgment of acquittal.

## I. BACKGROUND

Texas Department of Public Safety ("DPS") troopers Jose Prado and Raul Garcia stopped Acosta's vehicle for speeding on U.S. Highway 281 in Live Oak County on August 24, 2013. Garcia stated that, about three months prior to the stop, he had seen Acosta driving the same vehicle in Live Oak County. When Prado approached the vehicle, he observed that there were passengers inside not wearing seat belts. Prado stated that Acosta was acting "nervous, just constant—continuous talking." According to Prado, when Acosta stepped out of the car, he was "[e]xtremely nervous, jittery, shaking his hands, fishing for things in his pocket like loose change, doing some weird things with his hands to elaborate, scratching or messing with this area."[1] Garcia also testified that Acosta appeared "nervous" and "fidgety," "couldn't control his speaking," and "could not look me straight in the eye and tell me there is nothing wrong with his car." Acosta told Prado he was coming from Pharr and heading to Fort Worth to take one of the car's occupants, a child, "to go see his parents before the new school year started, and they had intentions of coming right back." Prado testified that the car "stood out because most cars aren't that clean." Additionally, the ignition key was not attached to any other keys, which the officers found unusual.

According to Prado's records, the car Acosta was driving was not registered to him, but rather to a "Ms. Guerrero out of Pharr." Prado stated: "[W]hen we asked Acosta

---

[1] The record does not reflect what "area" Prado was referring to in his testimony.

2

what relation he had with her it was inconsistent to what the wife told us."[2]  When the prosecutor asked Garcia whether "the answers were consistent or inconsistent about duration of stay, purpose, those sorts of things," Garcia replied:  "They were inconsistent." Both officers stated that drug traffickers often use vehicles belonging to a third party.

Acosta gave consent to search the vehicle.  The search revealed "religious artifacts" including a Bible and "good luck charms" depicting the "Santa Muerte," which, according to the officers, are commonly carried by drug traffickers.  The search also revealed "two plant-like items" or "herbs" which Prado stated are used for "good luck." Additionally, Acosta was in possession of around $300 in cash.

Using a tool which was found in a compartment in the rear of the car next to some of the "herbs," the officers removed a spare tire that was stored in a well underneath the floorboard.  Garcia stated that, as soon as the tire dropped from where it was secured, "it went to the right," indicating that it was "loaded with something that's not supposed to be there."  According to Prado, the spare tire was a different size than the tires which were actually mounted on the car, and the rim on the spare tire was made for a later model of car than the one Acosta was driving.  After cutting open the spare tire, the officers discovered seven "rectangular bundles" wrapped in "some type of clear paper."  The bundles were later confirmed to contain 24.48 pounds of marihuana.  Prado testified that he could not detect any odor of marihuana during the time it was "sealed in the tire."

Several photographs were identified by Prado and entered into evidence.  One photograph depicted "the lubricant of the oil that was used to prime the tire to get it back on there once they stuffed it with the narcotics or whatever . . . ."  According to Prado, it

---

[2] Neither officer testified as to what, exactly, Acosta and his wife told them about the registered owner of the vehicle.

3

was "still wet," which indicated that "it was recently done." Another photograph depicted "how clean the tire itself is." Prado testified: "Normally we have our spare tires under our cars. And you can wash your car all day, but how often do we go under there and clean the spare tire? We just don't do it. So to see one as clean as this is a big indicator." A third photograph depicted "tooling" on the bolt which had secured the spare tire in place; Prado stated that this indicated that the spare tire had "been recently lowered." Prado stated that it is not unusual for people who are carrying drugs to give consent to a search of their car.

Prado stated that, after discovering the contraband, he placed Acosta under arrest and read him his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Prado testified:

> We told him we found narcotics in the vehicle. He said, *You found drugs in the vehicle*, as if he was in shock or surprised. And then after we read him his rights he made the comment, and it's hard to interpret on the video, but it says, *I don't want my family to be here. If I take the fall will you let them go?* He said it in Spanish.

> And then right after he makes another statement saying that he didn't know about the drugs, why is his family here, *we didn't know about the drugs. Why are you holding us?*

Prado stated that the passengers in the car—Acosta's wife and two children, one of which was a minor—were handcuffed and detained briefly but were released at the scene. A video recording of the traffic stop from Acosta's patrol unit was entered into evidence without objection.[3]

On cross-examination, Prado conceded that he had been a DPS trooper for less than two months at the time of the events in question. He acknowledged that it is

---

[3] A certified court translator later testified, having reviewed the video recording of the traffic stop, that Acosta told the officers: "I'll give myself up if you don't arrest my family."

"ordinary" for a driver who has been stopped by police to become nervous. He agreed that it is "not unusual" for a person, when lending their car, to lend only the ignition key and not any other house keys. The officers never located or interviewed the car's registered owner, nor did they do any investigation of the case following Acosta's arrest. Prado conceded that Acosta has a disabled son, that Acosta may have received a disability check for his son, and that this might explain why Acosta had $300 in cash on his person. Prado agreed that Acosta was "very cooperative" during the traffic stop. Prado further acknowledged that the spare tire measured sixteen inches and the tires on the car measured seventeen inches; and he agreed that it is not unusual for a spare tire to be smaller than the tires on the car.

Prado agreed with defense counsel that Acosta was carrying an "invalid license" and had "a lot of outstanding tickets" at the time of the traffic stop. Prado further agreed that he could have arrested Acosta merely because of the "invalid license," and that this may explain why Acosta appeared nervous. He agreed that Acosta "never completely claimed responsibility or knowledge" of the marihuana in his vehicle.

On re-direct examination, Prado clarified that, prior to the search of Acosta's car, Acosta was given "written warnings for the traffic offenses" and Acosta then was permitted to drive his own vehicle to the sheriff's office, which is where the search took place. Prado stated:

> [B]efore we found the marihuana we could see [Acosta] from the parking lot [and] we saw him and his family pacing back and forth in the lobby, which is odd because if it was because of his license he had no reason to be scared or nervous at that point because he had already been issued the citation, meaning he wouldn't go to jail for that. And he got a warning for the seat belt and a citation for the speed. So he was—at that point for those traffic violations he was not going to jail for that.

Acosta was convicted and this appeal followed.

5

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Acosta argues that the evidence was insufficient to show that he had knowledge of the marihuana which was found hidden in the spare tire of the car he was driving. In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record of historical facts supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State,* 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* A hypothetically correct jury charge in this case would state that Acosta is guilty if he knowingly or intentionally possessed a usable quantity of marihuana in an amount of fifty pounds or less but more than five pounds. *See* TEX.

6

HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(4). A person acts intentionally with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. TEX. PENAL CODE ANN. § 6.03(a) (West, Westlaw through Ch. 46, 2015 R.S.). A person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). "Possession" means "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West, Westlaw through Ch. 46, 2015 R.S.).

To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005). However, when the accused is not in exclusive possession of the place where the substance is found, "it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* Under this rule, mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). But presence or proximity, when combined with other direct or circumstantial evidence of "affirmative links" between the accused and the contraband, "may well be sufficient to establish that element beyond a reasonable doubt." *Id.*

Some factors which may be considered in the "affirmative links" analysis include: (1) the accused's presence when a search is conducted; (2) whether the contraband was

in plain view or recovered from an enclosed area; (3) the accused's proximity to and the accessibility of the narcotic; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the accused was found with a large amount of cash; (13) whether the conduct of the accused indicated a consciousness of guilt; (14) whether the accused had a special connection to the contraband; and (15) whether the accused was observed in a suspicious area under suspicious circumstances. *See id.* at 162 n.12; *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.).

It is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162. "While affirmative links may be proved by circumstantial evidence, proof amounting to a strong suspicion or even a probability will not suffice." *Jenkins v. State*, 76 S.W.3d 709, 713 (Tex. App.—Corpus Christi 2002, pet. ref'd).

### III. DISCUSSION

The evidence at trial established conclusively that Acosta was driving the vehicle which contained the marihuana and that he was not the registered owner of the vehicle. Acosta argues that "[t]he fact that [he] was driving this vehicle does not automatically mean he owns the vehicle or any of its contents." That is true, but the fact that he was

8

driving the vehicle, combined with other evidence of "affirmative links," may potentially give rise to a reasonable inference that he knew what was inside the spare tire. *See Evans*, 202 S.W.3d at 161–62. The question is whether that other evidence establishes, "to the requisite level of confidence, that [his] connection with the drug was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405–06.

Here, the officers testified to the following facts: (1) Acosta drove the same vehicle in Live Oak County about three months before the traffic stop at issue[4]; (2) he appeared nervous and "fidgety" and "couldn't control his speaking" during the traffic stop; (3) he could not look Garcia in the eye when Garcia asked if there was anything illegal in the car; (4) his statement regarding his relationship with the vehicle's registered owner, as well as his answers regarding the "duration of stay, purpose, those sorts of things," were inconsistent with the answers given by his wife; (5) the vehicle contained "religious artifacts" and "herbs" which are commonly carried by drug traffickers; (6) Acosta and his family were "pacing back and forth" in the lobby of the sheriff's office while the officers searched the car; and (7) after the contraband was found, Acosta asked the officers whether they would let his family go if he were to accept responsibility.

Applying these facts to the factors enumerated above, we observe that most of the factors are not present in this case. In particular, the evidence established that: (1) the marihuana was not in plain view; (2) it was not readily accessible to Acosta; (3) Acosta

---

[4] On appeal, Acosta states that his trial counsel "should have objected to this testimony" because the officer was "without any knowledge of the purpose of the previous trip, identification of Appellant as the same driver was never authenticated, and this testimony directly implied that Appellant made prior drug trafficking trips . . . ." However, Acosta does not argue, implicitly or explicitly, that his trial counsel afforded constitutionally ineffective assistance. In any event, in a sufficiency analysis we must consider all evidence actually admitted at trial, including erroneously admitted evidence. *See Moff v. State*, 131 S.W.3d 485 (Tex. Crim. App. 2004).

9

did not appear to be under the influence of drugs; (4) he did not possess other contraband or narcotics; (5) he did not attempt to flee; (6) he did not make furtive gestures; (7) there was no detectable odor of contraband; (8) there was no other contraband or paraphernalia present; (9) Acosta did not own the vehicle in which the contraband was found and there was no evidence that he had the right to possess the vehicle; (10) Acosta was not in possession of a large amount of cash[5]; and (11) he was not found in a suspicious area or under suspicious circumstances. *See Evans*, 202 S.W.3d at 162 n.12; *Lassaint*, 79 S.W.3d at 740–41. Nevertheless, the absence of various links does not constitute evidence of innocence to be weighed against the links present. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976); *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

The only factors as to which the State presented evidence were: (1) that Acosta's "conduct indicated a consciousness of guilt"; (2) that he "made incriminating statements when arrested"; and (3) that he had a "special connection" to the contraband. *See Evans*, 202 S.W.3d at 162 n.12; *Lassaint*, 79 S.W.3d at 740–41. We will discuss each of these three factors in turn.

## A.     Conduct Indicating Consciousness of Guilt

We first address whether Acosta's conduct indicated a consciousness of guilt. We observed in *Lassaint v. State* that, while "[e]xcessive nervous behavior and unsettled

---

[5] Prado testified that Acosta was in possession of about $300 at the time of the traffic stop. However, he also testified that it would cost "well over [$]300" to pay for fuel for Acosta's round-trip journey. We do not believe $300 is so large an amount of cash as to be probative regarding whether Acosta knew of the contraband. *Cf., e.g., Henry v. State*, 409 S.W.3d 37, 43 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (finding $7,000 to be "a large amount of cash" in an affirmative links analysis); *Cisneros v. State*, 290 S.W.3d 457, 461 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (finding $2,243 to be "a large amount of cash" in an affirmative links analysis).

demeanor may be examples of consciousness of guilt," nervousness "is a tenuous link to the contraband because most people are somewhat nervous when confronted by a police officer." 79 S.W.3d at 743. Here, the officers testified that Acosta was nervous during the traffic stop, but that he answered their questions and was "very cooperative." Acosta's nervousness may be explained by the fact that he was just stopped by police with an invalid license, unbuckled passengers, and "a lot of outstanding tickets." Prado stated that, after Acosta had been cited for the invalid license and warned for the seat belt violation, "he had no reason to be scared or nervous" but was still "pacing back and forth in the lobby." But we do not believe that "pacing back and forth" in the lobby of a police station while waiting for one's car to be searched for contraband constitutes furtive or suspicious behavior.

Prado also testified that Acosta gave different answers to his questions than did Acosta's wife. But there was no evidence as to whether the answers given by Acosta were true. In *Lassaint*, we noted that "[t]he conflicting or untruthful statements of others cannot serve as an affirmative link when the accused made truthful statements." *Id.* at 745. Here, because there was no evidence as to whether Acosta's answers were truthful, the fact that his answers conflicted with his wife's answers cannot serve to affirmatively link him to the drugs. *See id.*

B.     **Incriminating Statement**

Second, we address Acosta's allegedly incriminating statement. After the officers told Acosta they found drugs in the vehicle, Acosta said: "I don't want my family to be here. If I take the fall will you let them go?" His statement was alternately translated as: "I'll give myself up if you don't arrest my family." This statement was not a direct admission

11

of guilt—in fact, according to Prado, at around the same time as Acosta made the statement, Acosta acted "as if he was in shock or surprised" that the officers found drugs in the car, and he repeatedly denied knowing the drugs were there. Nevertheless, the fact that Acosta offered to take responsibility in exchange for the release of his family does weigh in favor of finding an affirmative link between him and the contraband.

## C. Special Connection to Contraband

Finally, we consider whether the "religious artifacts" and "herbs" found in the vehicle may establish a "special connection" between Acosta and the contraband. *See Lassaint*, 79 S.W.3d at 741.[6] Prado stated that he saw a "Bible on the dashboard" and "good luck charms inside [Acosta's] wife's purse." He stated that the "herbs" were found "on the sun visor and near the compartment where the tools to lower [the tire containing] the drugs were located." According to Prado, the "Santa Muerte" is "supposed to bring good luck and faith and guidance to people" and is "worshipped" by human smugglers and drug traffickers.

First, we note that neither officer testified that the "herbs" found in the vehicle are typically used by drug traffickers or are indicative of criminal activity. Instead, Prado opined that they are used for "good luck" and Garcia testified that they were "put there for a purpose" but did not elaborate on what that purpose was. The presence of the "herbs" in the vehicle, therefore, cannot affirmatively link Acosta to the contraband based on the evidence adduced at trial.

---

[6] We do not believe the officers' testimony regarding Acosta's keychain is probative as to a "special connection" between Acosta and the contraband. The officers testified that the key to the vehicle Acosta was driving was on a keychain with no other keys, and that this was unusual. However, there was no testimony that this was indicative of criminal activity. Moreover, the keychain—as depicted in the photograph entered into evidence—appears to have at least one other key attached to it.

12

We next address the "religious artifacts." Texas appellate courts have considered the significance of objects depicting Santa Muerte in other cases. In *Cantu v. State*, the court considered the fact that appellant carried a Santa Muerte statue as a factor in favor of finding that police had reasonable suspicion to detain the appellant. No. 04-13-00207-CR, 2014 WL 4230068, at *4 (Tex. App.—San Antonio Aug. 27, 2014, no pet.) (mem. op., not designated for publication) (noting that the testifying officer "learned in his criminal interdiction training that people involved in the drug trade sometimes carry such an item with them because they believe it will protect them and their drug loads"). In *Flores v. State*, the Fourteenth Court of Appeals noted that "Santa Muerte is known as the patron saint of narcotics traffickers" but did not explicitly consider the fact that appellant possessed a Santa Muerte medallion and shrine in concluding that the evidence supported "affirmative links." 440 S.W.3d 180, 186 (Tex. App.—Houston [14th Dist.] 2013), *vacated on other grounds*, 427 S.W.3d 399 (Tex. Crim. App. 2014). In *Batiste v. State*, the Texas Court of Criminal Appeals found that the trial court did not abuse its discretion by overruling the appellant's objection to punishment phase evidence of a Santa Muerte necklace that appellant was wearing when he was arrested. No. AP-76,600, 2013 WL 2424134, at *6 (Tex. Crim. App. June 5, 2013) (not designated for publication). There, the testifying officer explained that, "in the criminal world, it's worn . . . to keep the police away and hope your criminal endeavor goes okay." *Id.* at *4. The officer conceded, however, that "non-criminals" may "also have items that might have Santa Muerte on them" and that "[n]ot everybody wearing a Santa Muerte is a criminal." *Id.* at *4 n.5. The Court found that the testimony was relevant as to appellant's gang membership, which in turn was relevant to future dangerousness, and therefore the

evidence was admissible at the punishment phase. *Id.* at *5. In *Mireles v. State*, the Dallas court found that it was not error to deny a mistrial when the State presented evidence at the punishment stage that the defendant worships Santa Muerte and that followers of Santa Muerte commit violent acts. No. 05-12-00040-CR, 2013 WL 226190, at *11 (Tex. App.—Dallas Jan. 18, 2013, no pet.) (not designated for publication) (noting that the trial court instructed the jury to disregard the remark and appellant did not rebut the presumption that the jury followed the instruction). Finally, in *Medina v. State*, the First Court of Appeals found insufficient evidence to support "affirmative links" even though a bag containing crack cocaine was found on top of a Santa Muerte shrine in appellant's house. No. 01-10-01134-CR, 2011 WL 6013094, at *5 (Tex. App.—Houston [1st Dist.] Dec. 1, 2011, pet. ref'd) (not designated for publication) (noting that "appellant was not present at her house when the drugs were found, and there was no evidence about how long she had been absent from the house"). The State has not directed us to any case, and we find none, where evidence of an object depicting the Santa Muerte has been explicitly held to establish an "affirmative link" between the owner of the object and the contraband.

Under the circumstances of this case, we find that the officers' testimony regarding the Santa Muerte, even viewed in the light most favorable to the prosecution, could not affirmatively link Acosta to the drugs. The rules of evidence provide that opinion testimony by lay witnesses must be "rationally based on the witness's perception," *see* TEX. R. EVID. 701(a), but the officers did not testify as to any perceptions which undergirded their opinion that the presence of Santa Muerte is indicative of criminal activity. Although defense counsel did not object to this testimony, conclusory statements are generally not

14

probative evidence. *See Swearingen v. State*, 303 S.W.3d 728, 733 (Tex. Crim. App. 2010) (holding that a witness's "conclusory statement" that "individuals deposit their DNA on objects that they touch" was not "concrete evidence that biological material existed on the evidence sought to be tested"). Moreover, even if Acosta's testimony regarding the tendencies of drug traffickers may generally be considered probative, there was no evidence, direct or circumstantial, that Acosta was aware that the Santa Muerte "good luck charms" were in his wife's purse.

**D.    Analysis**

The only probative evidence that we find in the record tending to establish an affirmative link between Acosta and the contraband are the undisputed facts that: (1) he was found in the same car as the contraband, and (2) he offered to accept responsibility if the officers would let his family go. There was no direct evidence establishing Acosta's knowledge of the contraband in his vehicle—for example, there were no fingerprints collected from the bundles, the spare tire, or the tool used to access the tire—and there was no direct or circumstantial evidence establishing that Acosta was present when the drugs were loaded in the car. Moreover, police did not interview or even investigate the identity of the registered owner of the vehicle. And, it is undisputed that, although Acosta appeared nervous during the traffic stop, he answered the officers' questions and cooperated with them fully.

We believe this case is analogous to *Jenkins v. State*, in which we held there was insufficient evidence of intentional or knowing possession of drugs. *See* 76 S.W.3d at 719. There, an officer observed a car crossing a lane marker and initiated a traffic stop. *Id.* at 714. Jenkins, who was in the front passenger's seat, began "moving around,

15

shuffling inside the car" and another passenger in the back seat "popped up." *Id.* The driver exited the vehicle immediately, which the officer found to be uncommon, and gave information regarding his criminal history which differed from police records. *Id.* Jenkins, meanwhile, appeared "more nervous than normal" and, when the officer asked him to exit the vehicle, he "backed toward [the officer] as if to be handcuffed," which the officer found unusual. *Id.* Jenkins gave "unsure and evasive" answers to the officer's questions. *Id.* The back seat passenger, who was the owner of the car, consented to a search, which revealed a loaded handgun underneath the front passenger seat. *Id.* After the officer opened the trunk, he "recognized the odor of marihuana" and discovered seven bundles of marihuana. *Id.* at 715. Later, the back seat of the car was removed, revealing "an envelope, a box of sandwich baggies, rubber gloves, $1,978 in cash," and a box containing cocaine. *Id.* A black duffel bag belonging to the driver, which was found in the back passenger seat, contained "baggies used for weighing and packaging drugs." *Id.*

We held that all of this evidence was insufficient to "link appellant to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it." *Id.* at 719. We held that Jenkins's movements in the car were not furtive because there was "nothing suspicious" about the surrounding circumstances. *Id.* at 718 (noting that "[m]ere movement by an occupant in a vehicle being stopped by a law enforcement officer, not coupled with reliable information nor suspicious circumstances, does not give rise to probable cause to search of the vehicle"). We acknowledged that there was a large amount of cash in the car, but because two other people "had personal property

16

connected either with drug paraphernalia or the marihuana"—i.e., the driver and back seat passenger—the probative force of this evidence was "decrease[d]." *Id.* Further, the officer's testimony that "those who transported large amounts of drugs tended to travel with weapons" did not link Jenkins to the contraband because the officer "conceded that it was possible for a person sitting in the front passenger seat to not know a firearm was underneath," and there were no fingerprints linking Jenkins to the gun. *Id.* Finally, although there were three pairs of shoes found in the trunk where the marihuana was found, there was no evidence of Jenkins's shoe size or that the shoes belonged to him, "much less that [he] placed them there at a time when the marihuana was present." *Id.*

Here, as in *Jenkins*, there were multiple adults other than the appellant in the car when the contraband was found, and the State offered minimal evidence tending to establish that the appellant was more responsible than the other occupants for the presence of the contraband. We therefore find that, based on all of the evidence adduced at trial, a reasonable trier of fact could not have concluded beyond a reasonable doubt that Acosta's possession of the marihuana was "more than just fortuitous." *See Poindexter*, 153 S.W.3d at 405–06. Instead, even when viewed in the light most favorable to the verdict, the evidence supported no more than a mere suspicion—or at most, a bare probability—that Acosta had "actual care, custody, control, or management" of the marihuana found in the vehicle he was driving. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38); *Jenkins*, 76 S.W.3d at 713. Accordingly, the evidence was insufficient to support the conviction, and we sustain Acosta's issue on appeal.

17

## IV. CONCLUSION

We reverse the trial court's judgment and render judgment of acquittal.

DORI CONTRERAS GARZA,
Justice

Dissenting Opinion by
Justice Gregory T. Perkes

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of July, 2015.



# NUMBER 13-14-00415-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GENARO GALVAN ACOSTA JR.,                                        Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

On appeal from the 156th District Court
of Nueces County, Texas.

# DISSENTING MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Perkes**
**Dissenting Memorandum Opinion by Justice Perkes**

I dissent from the majority's holding because I believe the evidence is sufficient to

support appellant's conviction.

Each case must be examined on its own facts. *Hurtado v. State*, 881 S.W.2d 738,

743 (Tex. App.—Houston [1st Dist.] 1994, pet ref'd); *Whitworth v. State*, 808 S.W.2d 566,

569 (Tex. App.—Austin 1991, pet. ref'd). The logical effect of the cumulative evidence is more important than tallying factors. As the majority notes, "it is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals cautions us against reviewing these facts or links in isolation. *Id.* at 164. Furthermore, we may not substitute our own weighing of the evidence and alternative-explanation exercises for those of the jury. *Id.* With that in mind, I turn to the evidence.

The evidence admitted against appellant consists of: 1) approximately 25 pounds of marijuana found in the spare tire of the car; 2) appellant was the driver of the car at the time of the arrest and had been earlier observed driving the car; 3) appellant appeared nervous during the stop and subsequent search; 4) appellant's incriminating statement made after the discovery of the marihuana; and 5) appellant possessed $300 but was unemployed.[1]

The fact that appellant was the driver of the car that was later found to contain marijuana is suspicious. *See Roberson v. State*, 80 S.W.3d 730, 742 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Martinets v. State*, 884 S.W.2d 185, 188 (Tex. App.—Austin 1994, no pet.). This, combined with other evidence, can be sufficient to uphold possession convictions. *See Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976). The other evidence was that Officer Prado saw appellant driving the same car

---

[1] I agree with the majority that the "Santa Muerte" religious paraphernalia is not an "affirmative link" connecting appellant to the drugs. Even if such material did constitute evidence of drug smuggling, officers located the "Santa Muerte" artifact in appellant's wife's purse.

2

three months prior, inferring that appellant had a right to possess the car. This is the second link. Appellant continued to exhibit nervous behavior by pacing back and forth in the police station—the third, albeit weak, link. After officers discovered the marijuana in the car, appellant stated he would accept responsibility if his family were released—the strong fourth link. While appellant's possession of the $300 is not by itself unusual, when combined with his unemployment, the money does have probative value in connecting appellant to the drugs. This is the fifth link.

Each piece of evidence is not dispositive by itself. However, when weighing the cumulative effect of the evidence, I believe that the jury could have reasonably found, based on the circumstantial evidence coupled with the reasonable inferences from it, that appellant exercised sufficient care, custody, control, or management over the marijuana. Appellant's issue sole should be overruled.

I would affirm the conviction.


                                        GREGORY T. PERKES
                                        Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of July, 2015.

3